LOTTI BLUEMNER
*In Propria Persona*
9663 Santa Monica Blvd., Suite 162
Beverly Hills, California 90210

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/2/2015
```

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERGO MEDIA CAPITAL, LLC; CEE GEE CEE, LLC and ERIK H. GORDON, <br><br> Plaintiffs, <br><br> v. <br><br> LOTTI BLUEMNER, <br><br> Defendant. | Case No.: 15 CIV 1377 (LGS) <br><br> **MOTION TO DISMISS ACTION FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TO DISMISS OR TRANSFER THE ACTION FOR FORUM *NON-CONVENIENS*; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> *[concurrently filed with Declaration of Lotti Bluemner in support of Motion to Dismiss]* |

**COMES NOW** specially appearing Defendant LOTTI BLUEMNER, an individual ("Defendant BLUEMNER,") who requests, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, that this court dismiss this action against specially appearing Defendant BLUEMNER as this court lacks *in personam* jurisdiction over Defendant BLUEMNER and because this action was filed in an improper venue, or, alternatively, that this court dismiss or transfer this action based upon forum *non-conveniens*.

---

1

**PLAINTIFF LOTI BLUEMNER'S MOTION TO DISMISS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action arises out of allegedly improper conduct taken by Defendant BLUEMNER in connection with, or arising out of, her employment, and termination from her employment, with Plaintiffs ERIK H. GORDON ("Plaintiff GORDON") and ERGO MEDIA CAPITAL, LLC ("Plaintiff ERGO,") as Plaintiff GORDON's Los Angeles based personal assistant.  Plaintiff GORDON, ERGO, and CEE GEE GEE, LLC will hereinafter be collectively referred to as, "Plaintiffs."  In her role as Plaintiff GORDON's Los Angeles based personal assistant, Defendant BLUEMNER was responsible for, among other things, maintaining and overseeing the upkeep and maintenance of Plaintiff GORDON's Beverly Hills condominium, the three (3) cars he maintained there, and for arranging travel arrangements for Plaintiff GORDON, and his guests, into and out of Los Angeles.  (*See* Complaint, Docket No. 1, ¶22.)  (Declaration of Lotti Bluemner "Bluemner Dec.," ¶6.)

Importantly, she performed no job duties in New York, as Plaintiff GORDON had another personal assistant, Travis Braha, who worked as Plaintiff GORDON's New York based personal assistant.  (Bluemner Dec. ¶6.)  A true and correct copy of a representative email, in which Defendant GORDON was referred to as Plaintiff GORDON's Los Angeles based personal assistant, is attached to the Declaration of Lotti Bluemner as **Exhibit "A,"** and incorporated herein by this reference as though fully set forth.

### A. A Substantially Similar Action is Already Pending in the Central District of California

On February 28, 2014, and *approximately a year prior to this action being filed,* Defendant BLUEMNER filed an action, arising out of the same facts and circumstances as this instant action, in the Los Angeles Superior Court, Central District, Stanley Mosk Courthouse, Case Number BC 538111, alleging, among other things, hostile work environment, discrimination, wrongful termination in violation of

---

1

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

public policy, intentional infliction of emotional distress, and unfair business practices in connection with her employment as Plaintiff GORDON's personal assistant (hereinafter referred to as the "California Action.") (Bluemner Dec., ¶8.) A true and correct copy of Defendant BLUEMNER's California Action is attached to the Declaration of Lotti Bluemner at **Exhibit "B,"** and incorporated herein by this reference as though fully set forth. In connection with the California Action, and prior to filing the same, Defendant BLUEMNER received a right to sue letter in California. (Bluemner Dec., ¶9.) Plaintiff GORDON and ERGO (the named Defendants in the California Action,) did not timely appear, and Defendant BLUEMNER took their defaults in that action on April 7, 2014 and April 17, 2014, respectively. (Bluemner Dec., ¶10.)

On October 6, 2014, *and on the last day by which they statutorily could do so,* Plaintiffs GORDON and ERGO each filed motions for relief from default in the California Action, seeking to set aside the defaults entered against them. (Bluemner Dec., ¶11.) Plaintiffs' motions were granted, over Defendant BLUEMNER's opposition, on January 27, 2015, after a contested evidentiary hearing held on January 14, 2015. (Bluemner Dec., ¶11.)

**B. The California Action Was Removed to The District Court for the Central District of California on February 27, 2015, Two Days After This Action was Filed**

On February 27, 2015, *and despite having filed answers to Defendant BLUEMNER's complaint in connection with their motions from relief from default,* and, <u>once again</u>, on the last day by which Plaintiff GORDON could statutorily do so, Plaintiff GORDON filed a notice of removal, removing the California Action to the United States District Court for the Central District of California. (Bluemner Dec., ¶14; *see* 28 U.S.C. 1446(c)(1).) A true and correct copy of Plaintiff GORDON's Notice of Removal in the California Action is attached to the Declaration of Lotti Bluemner as **Exhibit "C,"** and incorporated herein by this reference as though fully set

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

1  forth.  The California Action is currently pending in the Central District of Los
2  Angeles, case number 2:15-cv-01392 (MMM)(AJWx).  (Bluemner Dec., ¶16.)
3       Plaintiff GORDON filed his notice of removal the day *after* his opposition to
4  Defendant BLUEMNER's motion for attorneys' fees and costs, brought in connection
5  with Plaintiffs GORDON and ERGO's Motions for Relief From Default, was due, and
6  was filed for the transparent purpose of divesting the state court of jurisdiction to rule
7  on the same.  (Bluemner Dec., ¶13.)  Defendant BLUEMNER filed a motion for
8  remand in the California Action on March 30, 2015 which is currently set for hearing
9  on June 15, 2015.  (Bluemner Dec., ¶17.)

10  **C. The Court Does Not Have Personal Jurisdiction Over Defendant**
11      **BLUEMNER**

12       Plaintiffs' complaint alleges that this court has personal jurisdiction over
13  Defendant BLUEMNER because "during Defendant's employment, she was paid by
14  direct deposit from…a bank account located in New York," and that "Defendant was in
15  regular communication by email and by phone with coworkers in New York" in
16  connection with her job duties.  (Complaint, Docket No. 1, ¶ 17.)  However, neither of
17  these alleged actions constitute purposeful contacts with the state of New York relating
18  to Plaintiffs' claims, such that this court may exercise jurisdiction over Defendant
19  BLUEMNER.  Consequently, this court does not have personal jurisdiction over
20  Defendant BLUEMNER.

21      **1. The Allegation that Defendant Was Paid From A New York**
22        **Account Is Insufficient to Subject her to Personal Jurisdiction in**
23        **this Court.**

24       The fact that Plaintiffs' paid Defendant BLUEMNER's salary from a bank
25  account in New York does not constitute a purposeful contact *by Defendant*
26  *BLUEMNER* sufficient to establish personal jurisdiction over her in this district.
27  Rather, Plaintiffs' actions, in paying Defendant from a New York account, is a
28  unilateral action of *Plaintiffs*, which cannot be attributed to Defendant for the purposes

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

of establishing jurisdiction.  If this were the case, and a court could establish personal jurisdiction over a Defendant any time a Defendant received a wire transfer, direct deposit, or, presumably, a simple electronic message of any sort from their employer with an account located in New York, then virtually every employee of a New York based company, regardless of their personal contacts with the state of New York, (if any,) would be subject to the jurisdiction of New York courts for any cause of action alleged by their employer – an illogical result which does not comport with constitutional and statutory requirements, which require that a Defendant have purposeful minimum contacts with a state before they are subject to the court's jurisdiction.

> ## 2.  The Allegation that Defendant Made Unrelated Telephone Calls To New York, or Sent Unrelated Email Messages To New York Is Not Sufficient to Exercise Personal Jurisdiction over Her in New York.

While Plaintiffs allege Defendant BLUEMNER made telephone calls and communicated via email with other employees in New York as part of her job duties, they fail to allege how such communications relate, (if at all,) to their causes of action. The fact that Defendant BLUEMNER may have some (unrelated) contacts with New York is not enough to exercise personal jurisdiction over her in this action unless those contacts relate to, or arise out of, Plaintiff's claims.  (*See* New York Civil Practice Law Section 302.)

However, an examination of Plaintiff's claims establish that this is not the case; rather, Plaintiff's claims are based on actions allegedly taken by Defendant in California, including, among other things, her alleged use of Plaintiff's car in Los Angeles, her alleged use of Plaintiff's credit card in Los Angeles, and alleged wrongful actions taken in connection with Los Angeles realtors.  (Complaint, Docket No. 1, ¶¶25, 77, and 79.)  Simply, Plaintiffs' allegations that Defendant BLUEMNER made some, unrealted telephone calls to New York during her employment with Plaintiffs GORDON and ERGO, and then, *later* took various allegedly wrongful actions in

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

1  California which were <u>unrelated to her New York telephone calls</u>, are insufficient to

2  exercise personal jurisdiction over her in New York.

3       Similarly, while Plaintiffs attempt to argue that Defendant's allegedly

4  "defamatory" statements, asserted in her complaint in the California Action, allegedly

5  caused "harm" in the state of New York, such allegations are not sufficient to establish

6  personal jurisdiction over Defendant BLUEMNER, in this district.  Rather, New York

7  <u>Civil Practice Law</u> Section 302(3) specifically <u>excludes</u> defamation from the "in state

8  injuries" which subject a defendant to personal jurisdiction.  (*See* Complaint, Docket

9  No 1, ¶¶ 3, 19.)

### 3.  The Non-Disclosure Agreement Is Unenforceable and Does Not Confer Jurisdiction

12       Lastly, Plaintiffs allege that the parties expressly agreed, in a "Non-Disclosure

13  Agreement," that venue would be appropriate in the United States District Court for the

14  Southern District of New York.  (Complaint, Docket No. 1, ¶ 18.)  However, for

15  reasons set forth more thoroughly hereinbelow, the parties' "Non-Disclosure

16  Agreement" is invalid and unenforceable.  As an initial matter, the Non-Disclosure

17  Agreement (hereinafter "NDA,") was entered into *after* Defendant BLUEMNER began

18  her employment, and NDA's which are presented to employees after they have begun

19  their employment are consistently held to be unenforceable.  (Bluemner Dec., ¶7.)

20  (*Dentsply Int'l v. Benton*, 965 F. Supp. 574, 578 (1997) (citing *Spradlin v. Lear Siegler*

21  *Management Servs. Co.*, 926 F.2d 865 (1991.))  Additionally, the NDA requires that the

22  parties litigate this matter in a forum which would otherwise be inappropriate;

23  specifically, the Southern District of the State of New York, and in a court that would

24  otherwise not have jurisdiction over the matter.  Such forum selection clauses, which

25  select a venue not otherwise proper, have consistently been held to be unconscionable,

26  and on that basis, void as a matter of public policy.  (Id.)  Thus, the NDA ostensibly

27  conferring jurisdiction on this court is unenforceable, and cannot be used to establish

28  personal jurisdiction over Defendant BLUEMNER in this case.

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

**D. <u>New York is an Improper Venue</u>**

Venue is proper only where (1) the defendant resides, (2) where a substantial part of the events or omissions giving rise to the claim occurred, or (3) where there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S. Code 1391. Here, however, Defendant BLUEMNER is a resident of Los Angeles, California. Plaintiff's claims are based on actions allegedly taken by Defendant in connection with actions taken in California, including, among other things, her alleged use of Plaintiff's car in Los Angeles, her alleged use of Plaintiff's credit card in Los Angeles, and alleged wrongful actions taken in connection with Los Angeles realtors. (Complaint, Docket No. 1, ¶¶25, 77, and 79.)   Finally, as argued hereinabove, Defendant BLUEMNER is not subject to this court's personal jurisdiction, as she does not have sufficient relevant contacts with the state of New York to impose personal jurisdiction on her in this court. For these reasons, as more thoroughly set forth herein, venue is not proper in this district. Accordingly, Defendant BLUEMNER respectfully requests that her Motion to Dismiss be granted, or, alternatively, that this action be transferred to the Central District of California.

**II.   <u>THE CAUSES OF ACTION ALLEGED IN THIS ACTION CONSTITUTE COMPULSORY COUNTER CLAIMS WHICH WERE REQUIRED TO BE BROUGHT, IF AT ALL, IN THE CALIFORNIA ACTION</u>**

Furthermore, there is already a similar, related action pending in the District Court for the Central District of California, and allowing Plaintiffs to fragment this case by filing what amount to "compulsory counter claims" in a separate action in this court, more than a year after the California Action was filed, is judicially inefficient, risks incompatible judgments, and is prejudicial to Defendant BLUEMNER, who has no contacts with the state of New York.

///

///

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

### A. Plaintiffs' Claims Arise Out of the Same Facts and Circumstances as The California Action

Two (2) days prior to filing a Notice of Removal in the California Action, and while the California Action was still pending in the Los Angeles Superior Court, Plaintiffs filed this instant action. (Bluemner Dec., ¶14.) Importantly, Plaintiffs GORDON and ERGO, together with Plaintiff CEE GEE CEE, LLC ("Plaintiff CEE GEE CEE,") filed this instant action after Plaintiffs GORDON and ERGO's motions for relief from default had been granted, and after their answers were filed in that action. (Bluemner Dec., ¶12.)

The first four (4) causes of action alleged herein, namely: (1) breach of contract, (2) breach of duty of loyalty, (3) tortuous interference with contractual relations, and (4) conversion, all arise out of the same facts and circumstances as the California Action, namely, Defendant BLUEMNER's employment with Plaintiffs ERGO and GORDON, and her termination therefrom. Moreover, Plaintiffs' last two (2) causes of action, defamation and intentional infliction of emotional distress, arise out of, and are based upon, the California Action itself, in which Defendant BLUEMNER alleges several embarrassing facts concerning Plaintiff GORDON's lifestyle, including his alleged use of illegal drugs. (Bluemner Dec., ¶8, **Exhibit "B."**) Consequently, the causes of action alleged herein by Plaintiffs were and are compulsory counter claims which must be brought in the California Action, if at all. (*See* Federal Rule of Civil Procedure, Rule 13(a); California Code of Civil Procedure Section 426.30.)

### B. Plaintiffs' Claims Constitute Compulsory Counter Claims

The claims alleged by Plaintiffs in this action are compulsory counter-claims, in that they arise out of the same transactions or occurrences as Defendant BLUEMNER's claims in the California Action, and are logically related thereto. Many of the facts and circumstances addressed in Plaintiffs' complaint, here, are also central to Defendant BLUEMNER's California Action, including, among other things, her alleged use of Plaintiff GORDON's vehicles, her alleged use of Plaintiff GORDON's

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

credit cards, and her business relationship with Los Angeles realtors, in connection with her search, as part of her job duties, to locate a Los Angeles home for Plaintiff GORDON. (*See* Bluemner Dec., **Exhibit "B;"** Complaint, Docket No. 1, ¶¶25, 77, and 79.) Plaintiffs' claims regarding those same events were thus required to be brought in the California Action, and not in a separate action, especially after Plaintiffs GORDON and ERGO had already answered Defendant BLUEMNER's complaint in the California Action. (*See* Federal <u>Rule of Civil Procedure</u>, Rule 13(a); California <u>Code of Civil Procedure</u> Section 426.30 ["if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which…he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded."])

Plaintiffs GORDON and ERGO filed this action without notifying Defendant BLUEMNER, or her counsel in the California Action, and without even attempting to bring such claims in the already pending California Action, despite the fact that Plaintiffs GORDON and ERGO were actively participating in that case, and had, as of January 27, 2015, filed answers therein. (Bluemner Dec., ¶15.)

Instead of bringing their claims in the pending California Action, and in an obvious attempt to "forum shop" for the benefit of Plaintiffs GORDON and ERGO, Plaintiffs chose to file this separate action in New York. Plaintiff GORDON's and Plaintiff ERGO's gamesmanship in fractionalizing and splintering this case into a bi-coastal litigation pending in several courts, simultaneously, is not in the best interests of the parties, or either court, and risks multiple, duplicitous, or worse, conflicting rulings on the rights and liabilities of these parties with respect to this dispute, and, moreover, does not respect the principal of judicial economy, and burdens this court with a dispute already pending, and being adjudicated, in another jurisdiction.

///

///

///

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

## C. Defendants' statements in the California Action are Protected by the Litigation Privilege.

For reasons of public policy, certain defamatory communications enjoy an absolute or qualified privilege, so that they fall outside the general rules imposing liability for defamation. Toker v. Pollak, 44 N.Y.2d 211 (1978). New York has traditionally accorded an absolute privilege to oral or written communications made in the course of judicial proceedings and which relate to the litigation. Herzfeld & Stern v. Beck, 175 A.D.2d 689, 572 N.Y.S.2d 683 (1st Dept.1991); Mosesson v. Jacob D. Fuchsberg Law Firm, 257 A.D.2d 381, 683 N.Y.S.2d 88 (1st Dept.1999) The privilege attaches not only at the trial or hearing phase, but to every step of the proceeding in question. The complete immunity for such statements is predicated on the public interest in the freedom of participants to "speak with that free and open mind which the administration of justice demands." Youmans v. Smith, 153 N.Y. 214, 47 N.E. 265 (1897). The rationale for according an absolute privilege to such statements has been explained as follows:

> "The interest of society requires that whenever [persons] seek the aid of the courts of justice, either to assert or to defend rights of person, property, [or] liberty, speech and writing therein must be untrammelled and free. The good of all must prevail over the incidental harm to the individual. So the law offers a shield to the one who in legal proceedings publishes a libel, not because it wishes to encourage libel, but because if [persons] were afraid to set forth their rights in legal proceedings for fear of liability to libel suits, greater harm would result, in the suppression of the truth. The law gives to all who take part in judicial proceedings, judge, attorney, counsel, printer, witness, litigant, a right to speak and to write, subject only to one limitation, that what is said or written bears upon the subject of litigation."

Allan and Allan Arts Ltd. v. Rosenblum, 201 A.D.2d 136, (2d Dep't 1994). See also Front, Inc. v. Khalil, 103 A.D.3d 481 (1st Dep't 2013), leave to appeal granted, 22 N.Y.3d 859, 981 N.Y.S.2d 369, 4 N.E.3d 381 (2014).

Here, Defendant BLUEMNER's allegations in the California Action are absolutely privileged under the litigation privilege conferred by New York law. Thus,

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

1   Plaintiffs cause of action for Defamation, based solely on the allegations contained in
2   Defendant BLUEMNER's California Action, are insufficient to state a cause of action
3   for defamation, as all such allegations are absolutely privileged, and cannot support a
4   claim of defamation.

5   **D. Plaintiffs Filed This Separate Action to Prejudice Defendant BLUEMNER**

6   Moreover, requiring Defendant BLUEMNER to litigate, simultaneously, in two
7   (2) separate circuit courts is extremely prejudicial to Defendant, who is a single mother
8   to an infant child, and who lives exclusively in Los Angeles, California. (Bluemner
9   Dec., ¶3.)    Specifically, it prevents Defendant BLUEMNER from reasonably and
10  judiciously litigating her claims against Plaintiff ERGO and GORDON, by requiring
11  her to litigate essentially the same case in the District Courts of California and New
12  York, simultaneously.  This was, presumably, the reason why Plaintiffs chose to bring
13  their claims in this court, and not in the California Action; however, such
14  gamesmanship and blatant "forum shopping" is prohibited by the Federal <u>Rules of</u>
15  <u>Civil Procedure</u>, and on that basis, Plaintiffs' case should be dismissed, or,
16  alternatively, transferred to the United States District Court of and for the Central
17  District of California, so that they can be heard together with Defendant
18  BLUEMNER's related claims already pending therein.

19  **III.**   <u>**THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT**</u>
20  <u>**AND VENUE IS IMPROPER IN NEW YORK**</u>

21  This court lacks jurisdiction over Defendant BLUEMNER, and for that reason,
22  this action should be dismissed.  Defendant BLUEMNER lacks sufficient minimum
23  contacts with the state of New York for this court to exercise personal jurisdiction over
24  her, and the parties' NDA is unenforceable and void as a matter of public policy.  For
25  the foregoing reasons, Defendant BLUEMNER respectfully requests that the court
26  grant her motion to dismiss, or alternatively, that this action be transferred to the
27  Central District of California.

28  ///

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

## A. **This Court Lacks Personal Jurisdiction Over Defendant BLUEMNER**

In order to exercise personal jurisdiction over a Defendant, the Plaintiff must establish that the Defendant has satisfied the state's long-arm statute, and the assertion of jurisdiction over the Defendant must comport with constitutional due process standards. (*Barrett v. Lombardi*, 239 F.3d 23, 26 (2001).)

### 1. **Plaintiffs have not established that New York's Long Arm Statute is Satisfied**

New York's long arm statute, New York <u>Civil Practice Law</u> Section 302, provides that the court may exercise personal jurisdiction over a non-domiciliary only where the Defendant: (1) transacts any business within the state…(2) commits a tortious act within the state, or (3) commits a tortious act outside the state causing injury to person or property within the state.  Importantly, section 302 specifically excludes cause of action for "defamation" from the statute's section regarding "tortious act committed within or outside the court," stating that such "defamatory" statements published outside the forum, do <u>not</u> confer jurisdiction over the Defendant.

Here, the only "tortuous acts" alleged by Plaintiffs concern either defamation, which is, as stated above, expressly excluded from the long arm statute's reach, or actions which occurred exclusively in California, such as alleged "kick-backs" taken from California realtors, alleged improper use of Plaintiff's credit card in California, and alleged unauthorized use of Plaintiff's vehicles in California. (Complaint, Docket No. 1, ¶¶25, 77, and 79.)  Simply, Plaintiffs have not alleged that Defendant conducts any regular activities in New York, has any regular contacts or connections with New York, or that she caused any proximate harm in the state of New York.  Plaintiffs admit as such by alleging that Defendant BLUEMNER was hired to be Plaintiff GORDON's *Los Angeles based* personal assistant, and was responsible for, predominantly, maintaining his Beverly Hills residence. (Complaint, Docket No. 1, ¶22.)  While Plaintiffs allege that Defendant BLUEMNER had some <u>unrelated</u> contacts in New York, such as communicating, periodically, as part of her job duties, with other, New

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

1    York based employees, Plaintiffs do not allege or explain how Defendant's periodic

2    communications with New York employees relates to her allegedly tortuous conduct, if

3    at all.  Therefore, Plaintiffs have not satisfied the requirements of the New York long

4    arm statute, and this court does not have personal jurisdiction over Defendant

5    BLUEMNER in this case.

6        **2.  Plaintiffs have Not Established that Constitutional Due Process Has Been**

7            **Satisfied**

8            Constitutional due process requires the plaintiff to prove the existence of either

9    general or specific jurisdiction. *Harlow v. Children's Hosp.*, 432 F. 3d 50, 57 (1st Cir.

10   2005.)  To satisfy the due process requirements, the defendant must first have sufficient

11   "minimum contacts" with the state.  To confer specific jurisdiction, the plaintiff's claim

12   must be <u>related</u> to the defendant's contacts, a Plaintiff cannot rely on unrelated or

13   incidental contacts to establish jurisdiction.  Second, the defendant's contacts with the

14   state must be <u>purposeful</u>.  And third, the exercise of jurisdiction must be reasonable

15   under the circumstances. *See Cambridge Literary Props., Ltd. v. W. Goebel*

16   *Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d 59, 63 (1st Cir.2002.)*  The general

17   standard is whether the nonresident defendant possesses sufficient contacts with the

18   forum state so that subjecting him, her, or it to the forum's jurisdiction does not offend

19   'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*,

20   326 U.S. 310, 316 (1945.)   "[P]laintiff[s] ultimately bear[ ] the burden of persuading

21   the court that jurisdiction exists." *Mass. Sch. of Law at Andover, Inc. v. American Bar*

22   *Association,* 142 F. 3d 26, 34 (1998.) "[P]laintiffs may not rely on unsupported

23   allegations in their pleadings," but are "obliged to adduce evidence of specific facts."

24   *Boit v. Gar-Tec Products*, Inc., 967 F. 2d 671, 675 (1992); *Foster–Miller, Inc. v.*

25   *Babcock & Wilcox Can.* 46 F.3d 138, 145 (1st Cir.1995.)

26           Plaintiffs have the burden to persuade the court that jurisdiction exists, and have

27   fallen woefully short of meeting that burden here. *Mass. Sch. of Law* at 34.  Defendant

28   is, and at all relevant times has been, a resident of the State of California.  Her

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

1   employment services for Plaintiffs were performed in California, and she has never
2   conducted any business within the state of New York.  (Bluemner Dec., ¶3.)  Plaintiffs
3   allege only two alleged "contacts" Defendant has with New York: her unrelated
4   periodic emails or telephone calls to persons in New York in connection with her job
5   duties, and the fact that Defendant was allegedly paid from Plaintiff's New York bank
6   account, which is also unrelated to the allegations made in Plaintiffs' complaint.
7   However, both of these purported "contacts" are insufficient to establish jurisdiction
8   over Defendant BLUEMNER.
9                    i.    Related Contacts
10           With respect to the first "prong," establishing contacts with the forum state
11   which are related to the cause(s) of action, the evidence produced to support specific
12   jurisdiction must show that the cause of action either arises directly out of, or is related
13   to, the defendant's forum-based contacts. *United Elec., Radio & Mach. Workers v. 163*
14   *Pleasant St. Corp.*, 960 F.2d 1080, 1088-1089 (1992.) The relatedness requirement is
15   not an open door; it is closely read, and it requires a showing of a material connection.
16   The Federal courts "steadfastly reject the exercise of personal jurisdiction whenever the
17   connection between the cause of action and the defendant's forum-state contacts seems
18   attenuated and indirect." *Id*. at 1089. "Instead, the defendant's in-state conduct must
19   form an 'important, or [at least] material, element of proof' in the plaintiff's case." *Id*. A
20   broad "but-for" argument is generally insufficient. Because "'but for' events can be
21   very remote...due process demands something like a 'proximate cause' nexus."
22   *Cambridge Literary Props. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.*, 295 F.3d
23   59, 65 (2002.) Although "strict adherence to a proximate cause standard in all
24   circumstances is unnecessarily restrictive," in most cases "the proximate cause standard
25   better comports with the relatedness inquiry because it so easily correlates to
26   foreseeability, a significant component of the jurisdictional inquiry." *Nowak v. Tak*
27   *How Invs., Ltd.*, 94 F.3d 708, 715 (1st Cir.1996.)
28           Here, all the causes of action alleged by Plaintiffs against Defendant

13

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

BLUEMNER relate to Defendant's activities in California, such as her alleged use of Plaintiff GORDON's vehicle, her alleged impropriety concerning Plaintiff GORDON's Los Angeles realtors, her alleged unauthorized use of Plaintiff GORDON's credit card, and the allegedly defamatory statements contained in the complaint filed in the California Action.  (Complaint, Docket No. 1, ¶¶25, 77, and 79.)  The only purposeful contacts alleged by Plaintiffs to have occurred in New York are Defendant BLUEMNER's periodic telephone calls, or email correspondence, to New York based employees made during the course of her employment.  However, Plaintiffs fail to allege how such email or telephone correspondence relates to Plaintiff's claims, let alone establish the "proximate cause nexus" required to establish personal jurisdiction.

ii.    <u>Purposeful Contacts</u>

In addition to being "related" to Plaintiffs' claims, Defendant's contacts with the forum must be purposeful, i.e. actions taken to intentionally avail herself of the privileges and protections conferred by that jurisdiction.  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958.)  Here, Plaintiffs allege that Defendant BLUEMNER was paid by Plaintiffs from a bank account located in New York.  (Complaint, Docket No. 1, ¶17.)  However, Plaintiffs fail to allege how Defendant BLUEMNER being paid *from Plaintiffs* can be attributed to her purposeful action or choice, especially where, as here, Plaintiffs have failed to allege that Defendant was even aware of the bank account from which her pay checks were distributed, or the fact that it was located in New York.

In *Harlow v. Children's Hosp.*, 432 F.3d 50, 63 (2005,) the first circuit addressed the specific issue of whether receipt of payment generated from an in-forum bank account was sufficient to confer personal jurisdiction over the Defendant in that forum. There, the court held that merely receiving funds from a bank account in the forum state <u>was not sufficient to confer personal jurisdiction over the Defendant,</u> and that a more purposeful contact with the forum state was required.  In *Harlow*, the Plaintiff, a patient at the Defendant hospital, sued the Massachusetts based hospital in her home state of Maine, alleging that, because she had paid the hospital from insurance proceeds

sent from Maine, the hospital was subject to personal jurisdiction in Maine.  (Id.)  The court disagreed, holding that the

> "*unilateral activity of those who claim some relationship with a nonresident defendant [such as the sending of payment,] cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.*"

(Id., *citing Hanson v. Denckla*, 357 U.S. 235, 253 (1958).)

The *Harlow* court instructs that simply receiving funds from a party in the forum state does not subject the Defendant to jurisdiction there, as such contact is more properly considered the unilateral action of the sending party, and not a purposeful contact with the forum state by the Defendant which could reasonably and fairly confer personal jurisdiction on the Defendant.  Thus, in the absence of any purposeful availment by Defendant BLUEMNER of the privileges of this forum, the mere fact that her paychecks were sent, *by Plaintiffs,* from New York, is not sufficient to establish personal jurisdiction over Defendant BLUEMNER in this case.

      iii.    Fair And Reasonable Exercise of Jurisdiction

The final "prong" analyzed with respect to the exercise of personal jurisdiction is whether imposing jurisdiction over the Defendant would be fair and reasonable.  Here, Defendant BLUEMNER, a California resident, has had only fleeting, unrelated contact with the state of New York, and exercise of jurisdiction over her in this action would be unreasonable, especially in light of the fact that a similar action, arising out of these same facts, is already pending in California.  Requiring Defendant BLUEMNER to defend in this action, while also prosecuting a similar action in Los Angeles, would impose a significant burden upon her, which would be unfair and unreasonable under the circumstances.

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

1    In analyzing the concept of a fair and reasonable exercise of jurisdiction, the
2  court generally analyzes seven factors.  Those factors are: (1) the extent of the
3  defendant's purposeful availment of the benefit of a forum; (2) the burden on the
4  defendant to litigate in that forums; (3) the extent of conflict with the defendant's
5  sovereign state; (4) the forums interests in hearing the dispute; (5) the most efficient
6  forum for judicial resolution of a dispute; (6) the importance of the forum to plaintiff's
7  interest in convenient and effective relief; and (7) the existence of an alternative forum.
8  See: *Gator.com Corp. v. L.L.Bean, Inc., supra.;  Dole Food Company, Inc. v. Watts*,
9  303 F.3d 1104 (CA 9th CAL 2002);  *Panivision Intern, L.P. v. Toeppen, supra.*

10   Here, Defendant BLUEMNER has made no purposeful availment of the benefits
11  or protections of New York law; she has conducted no business in this state, and her
12  contacts with this forum consist of: (1) communicating periodically with persons
13  located in New York via email or telephone, which contacts are unrelated to the alleged
14  harm asserted in this action, and (2) receiving paychecks drawn on a New York bank
15  account, which, also, is not relevant to Plaintiffs' claims.  (Complaint, Docket No. 1, ¶
16  17.)  Additionally, it would be a significant burden and expense for Defendant
17  BLUEMNER to have to defend herself in this forum, especially since she is already
18  litigating a case involving substantially the same parties, and involving the same facts,
19  in Los Angeles, California.  Furthermore, as all of Plaintiffs' claims involve actions
20  and events occurring in California, the New York courts have no significant interest in
21  hearing this dispute, and fractionalizing these parties' claims across two (2) separate
22  districts risks duplicitous or incongruous rulings.  The more efficient and convenient
23  forum for hearing this dispute in California, where the California Action is already
24  pending.

25   The Plaintiffs' complaint wholly fails to satisfy the requirements of *in personam*
26  jurisdiction against Defendant BLUEMNER.  Accordingly, Defendant BLUEMNER
27  respectfully request that her motion to dismiss the complaint for lack of personal
28  jurisdiction be granted.

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

### 3. The Forum-Selection Clause in the Non-Disclosure Agreement is not Enforceable

A forum selection clause is unenforceable if the execution of the contract or the specific provision in the contract involved a fraudulent action by one party amounting to unequal bargaining position, fundamental unfairness, or unconscionability, or if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision. *Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009); *Nearburg v. Yates Petroleum Corp.*, 123 N.M. 526, 537 (1997.) Here, the NDA agreement executed by and between Plaintiff GORDON and Defendant BLUEMNER is unenforceable, as Plaintiff GORDON requested Defendant BLUEMNER execute the NDA after she had already started working for Plaintiff GORDON, in and around May, 2012, and she felt compelled to sign it for fear of losing her job if she refused.  (Bluemner Dec. ¶7.)

Federal courts have consistently held that forum-selection clauses in employment contracts, executed *after* the employment has begun, are unenforceable because "the pressure to "preserve" a job a person already ha[s] render[s] the employee-employer relationship so inherently unequal that we would not enforce a forum selection clause in the employment agreement the employee executed with his new employer." *Dentsply Int'l v. Benton*, 965 F. Supp. 574, 578 (1997) (citing *Spradlin v. Lear Siegler Management Servs. Co.*, 926 F.2d 865 (1991.))  Moreover, the court in *Dentsply* noted that an NDA agreement executed after an employee has already started work need not be executed under "duress" to be held unconscionable; rather, all that is required is to show that the employer's "conduct would not have led an employee to believe he could negotiate the agreement." *Id.* at 579-580.  Here, like in *Dentsply,* the circumstances in which the NDA was presented to Defendant BLUEMNER further support the finding that the NDA is unconscionable and unenforceable.  The Agreement was presented to Defendant after she had already begun her employment with Plaintiffs GORDON and ERGO.  (Bluemner Decl. ¶7.)  Defendant understood the Agreement to be one of the

1   requirements for her employment with Plaintiff GORDON, and she signed it in order to
2   keep her job. (Bluemner Decl. ¶7.)  Resultantly, the NDA is unconscionable, as it was
3   executed under unequal bargaining power, and by a Defendant who understood that she
4   did not have a choice in its execution.  Consequently, the NDA is unconscionable and
5   should not be enforced to confer jurisdiction in this case.

6   **B. <u>Venue Is Inappropriate in the Southern District of New York</u>**

7        28 U.S. Code 1391 provides that venue is proper in a judicial district where (1)
8   the defendant resides, (2) where a substantial part of the events or omissions giving rise
9   to the claim occurred, or (3) if there is no other district in which an action may
10   otherwise be brought as provided in this section, any judicial district in which any
11   defendant is subject to the court's personal jurisdiction with respect to such action.  If
12   the venue-selection clause of a contract contemplates filing the action in an
13   inappropriate venue, the Federal Court may dismiss the action under Federal Rules of
14   Civil Procedure 12(b)(3). The Court may also transfer the action to an appropriate
15   venue, pursuant to 28 U.S.C.A. § 1406 which provides, in relevant part: "The district
16   court of a district in which is filed a case laying venue in the wrong division or district
17   shall dismiss, or if it be in the interest of justice, transfer such case to any district or
18   division in which it could have been brought." Here, venue is improper, and thus this
19   action should be dismissed, or, alternatively, transferred to the Central District of
20   California, where the California Action is currently pending.

21   **1. All of Plaintiffs Claims Concern Actions Occurring In Los Angeles,**
22      **California**

23        Here, Venue is not proper in the Southern District of New York, as Defendant is
24   a resident of California, and all the events giving rise to Plaintiffs' claims occurred in
25   California, or arise out of actions taken in California. (*See* Complaint, Docket No. 1,
26   ¶¶25, 77, and 79.)  Specifically, Plaintiffs' first cause of action, breach of contract,
27   arises out of the NDA, which was executed in California, and which concerns
28   Defendant BLUEMNER's employment in California.  (Bluemner Decl. ¶¶ 6-7.)

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

1   Similarly, the second, third, and fourth causes of action arise out of Defendant's

2   alleged wrongful conduct in the performance of her duties during her employment for

3   Plaintiffs in California, including: (a) allegedly impermissibly driving Plaintiffs'

4   vehicles in Los Angeles, (b) allegedly utilizing Plaintiffs' credit card without

5   permission, (c) allegedly failing to return a computer allegedly used in connection with

6   her employment in Los Angeles, after her termination, and (d) allegedly conspiring to

7   receive "kick-backs" concerning a contemplated Los Angeles real-estate purchase.

8   (*See* Complaint, Docket No. 1, ¶¶25, 77, and 79.)  Finally, Plaintiffs' final two causes

9   of action, for defamation and intentional infliction of emotional distress, arise out of

10  and are based upon statements made by Defendant BLUEMNER in her complaint in

11  the California Action, and were published in Los Angeles, California.  (Bluemner Decl.

12  ¶ 8.)

13          The only allegations made by Plaintiffs with respect to actions taken by

14  Defendant BLUEMNER in New York concern her unrelated telephone calls and

15  emails, and the unrelated fact that Defendant was paid by direct deposit from a bank in

16  New York.  (Complaint, Docket No. 1, ¶ 17.)  However, such allegations are

17  immaterial to the determination of venue, as these facts have no bearing or relationship

18  to Plaintiffs' claims.

19      **2.   Plaintiffs' Defamation Claims Cannot Be Used to Establish Venue in the**

20          **Southern District of New York**

21          Plaintiffs also attempt to establish venue by alleging that Plaintiffs' suffered

22  harm in this district as a result of Defendant BLUEMNER's allegedly defamatory

23  statements made in the complaint in the California Action.  As an initial matter,

24  Plaintiffs' unsupported legal conclusion that "damage to Gordon's reputation" occurred

25  in New York should not be used as a basis for establishing venue in this case, as

26  Plaintiffs admit Plaintiff GORDON is a resident of Florida, and do not allege how, or

27  why, Plaintiff GORDON's reputation could be harmed in the state of New York, or,

28  more specifically, how Defendant BLUEMNER's statements, made the context of

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

1    litigation pending in California, could reasonably affect his reputation across the

2    county, in New York (or in Florida.)

3         Additionally, and setting aside the unsupported and simply illogical conclusory

4    assertions stated in Plaintiff's complaint with respect to Plaintiff GORDON's purported

5    injuries in New York as a result of Defendant BLUEMNER's allegedly defamatory

6    statements in California, New York case law makes clear that defamation actions

7    should be litigated in the forum in which the statements were published, and not where

8    the harm occurred, *even if* the Plaintiff resides in a different county. *Konigsberg v.*

9    *Long Island Daily Press Pub. Co.*, 293 N.Y.S.2d 861 (Sup 1968).  Resultantly,

10   Plaintiffs' defamation claims cannot be used to establish proper venue in New York.

11        For example, in *Konigsberg v. Long Island Daily Press Pub. Co.*, 293 N.Y.S.2d

12   861 (Sup 1968), the New York supreme court held that defamation actions should be

13   tried in the county where the statement was published, and not in the county where the

14   Plaintiff resided at the time of publication, even if some copies of the statement were

15   circulated in the Plaintiff's county.

16

17        *"The mere fact, that a small percentage of the total number of copies of the*
     *newspaper is circulated in the county selected by plaintiff, is insufficient to oppose a*
18   *motion to change the venue to the county where the paper is actually published and*
19   *most of its copies circulated.   This would be so even if, at the time of the*
     *commencement of this action, plaintiff resided and had a place of business in the*
20   *county where the action was commenced."*

21

22   *Konigsberg v. Long Island Daily Press Pub. Co.*, 293 N.Y.S.2d 861 (Sup 1968)

23   (quoting *Police Benevolent Association of New York State Police v. Post-Standard*

24   *Company*, 244 N.Y.S.2d 645 (1963.)

25        Here, Plaintiffs' complaint alleges that Defendant BLUEMNER's allegedly

26   defamatory statements were made in her complaint in the California Action, and were

27   therefore published in Los Angeles, California.  Resultantly, the proper venue for

28

---

**20**

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**

1  Plaintiff's claims is Los Angeles, the venue in which the statements were published,

2  and Defendant BLUEMNER resides, and not in New York, as Plaintiffs allege.

3  ### C. New York is Not a Convenient Forum

4  The doctrine of *forum non conveniens* rests upon the principle that a Court may

5  resist imposition of its jurisdiction upon a Defendant when the matter before it may be

6  more conveniently tried in another forum.  See: *Hamilton v. Firestone Tire and Rubber*

7  *Company, Inc.*, 679 F.2d. 143 (CA 9th CAL 1982).

8  In determining whether to dismiss an action for forum *non conveniens,* the Court

9  must consider both private interest factors effecting the convenience of the litigants,

10  including all practical problems that will make the trial easy, expeditious, and

11  inexpensive, as well as any public interest factors that weigh in favor of resolution in

12  one venue or another.  (Id.)   Courts have taken a flexible approach in addressing forum

13  non conveniens, considering such factors as: (1) the burden on New York courts, (2)

14  the hardship for the defendant, (3) the delay in bringing the motion, (4) whether the

15  plaintiff has an alternative forum, (5) whether there is a separate related action in a

16  foreign jurisdiction, (6) to what degree the cause of action arose in a foreign

17  jurisdiction, (7) whether foreign law will apply, and (8) whether the parties are New

18  York residents.  *Turay v. Beam Bros. Trucking, Inc.*, 878 N.Y.S.2d 391, 393 (2d Dep't

19  2009); *Genicom Corp. v. Ekco Group*, 554 N.Y.S.2d 202, 203 (1st Dep't 1990);

20  *Highgate Pictures, Inc. v. De Paul*, 549 N.Y.S.2d 386, 387–88 (1st Dep't 1990); *Brown*

21  *v. Dataw Island Realty, Inc.*, 542 N.Y.S.2d 99, 100 (4th Dep't 1989) ; *West Broward*

22  *Group, LLC v. Independence Community Bank Corp.,* 823 N.Y.S. 2d 646, 648 (2006);

23  *Economos v. Zizikas*,  796 N.Y.S.2d 338, 340 (1st Dep't 2005).

24  Here, all of the factors generally considered by the court in connection with a

25  forum *non conveniens* analysis weigh in favor of dismissing this action, or transferring

26  it to a different venue.  Requiring Defendant BLUEMNER to litigate this case in New

27  York would be a significant burden and expense for her, especially since she is already

28  litigating a case involving substantially the same parties, and involving the same facts,

in Los Angeles, California.  Furthermore, as all of Plaintiffs' claims involve actions and events occurring in California, the New York courts have no significant interest in hearing this dispute.  This is especially true since the California courts are already adjudicating the California Action, which has been pending for more than a year. Judicial economy dictates that the California court adjudicate this entire dispute, rather than require two separate courts to resolve this action on a piecemeal basis. Additionally, having the entire action heard in California reduces the likelihood of the issuance of two, conflicting or duplicitous judgments.  Finally, all of the claims alleged on Plaintiffs complaint involve actions allegedly taken by Defendant BLUEMNER in California, and so the California court has a greater interest in resolving this dispute, and having these issues litigated where they occurred would not only be reasonable but would result in a great savings and economy to the parties and to the Courts. Defendant BLUEMNER therefore respectfully requests that this matter be dismissed or, alternatively, transferred to the United States District Court in and for the Central District of California on the basis of forum *non conveniens.*

## IV.    **CONCLUSION**

Based on the foregoing, as set forth herinabove, specially appearing Defendant BLUEMNER respectfully requests that the court grant the relief requested herein and dismiss Plaintiffs Complaint, or in the alternative, transfer this action to the United District Court located for the Central District of California.

Dated:  April 1, 2015


_____
LOTTI BLUEMNER
*In Propria Persona*

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**