LOTTI BLUEMNER
*In Propria Persona*
9663 Santa Monica Blvd., Suite 162
Beverly Hills, California 90210

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 4/2/2015

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERGO MEDIA CAPITAL, LLC; CEE GEE CEE, LLC and ERIK H. GORDON,<br><br>Plaintiffs,<br><br>v.<br><br>LOTTI BLUEMNER,<br><br>Defendant. | Case No.:  15 CIV 1377 (LGS)<br><br>**DECLARATION OF LOTTI BLUEMNER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS ACTION FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TO DISMISS OR TRANSFER THE ACTION FOR FORUM *NON-CONVENIENS***<br><br>*[Concurrently filed with Motion to Dismiss Action for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative, to Dismiss or Transfer the Action for Forum Non Conveniens]* |

1

**DECLARATION OF LOTTI BLUEMNER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# DECLARATION OF LOTTI BLEUMNER

I, Lotti Bluemner, declare:

1.     I am the Defendant in this action.  I have personal knowledge of the matters set forth in this Declaration and, if called as a witness, I could and would testify competently as to the matters stated below.

2.     I am making this Declaration in support of my motion to dismiss for lack of personal jurisdiction, or, alternatively, motion to dismiss or transfer the action for forum *non conveniens* (hereinafter "Motion to Dismiss.")

3.     I am currently a single mother to an infant daughter, and live and have lived exclusively in Los Angeles California, at all times relevant hereto.  I have never conducted business in the state of New York, and am not a resident of that state.

4.     Defendant GORDON maintains several residences, in both Los Angeles, New York, and Florida, and often travels both between various cities in the United States, including Los Angeles and New York, as well as internationally, and employs multiple personal assistants in various cities, including Los Angeles and New York to, among other things, maintain his residences while he is away, and manage his personal affairs.  My job duties were performed exclusively in Los Angeles, California, although I once accompanied Plaintiff GORDON to Las Vegas, Nevada as part of my job duties as his personal assistant.

5.     In or about the middle of the month of May, 2012, I began work for Plaintiff ERIK H. GORDON (hereinafter "Plaintiff GORDON,") as his Los Angeles based personal assistant.  At all times during the course of my employment, Plaintiff GORDON maintained a Los Angeles residence in Penthouse #4 of a condominium unit located at 132 S. Maple Drive, Beverly Hills, California 92012 (hereinafter the "Los Angeles Residence.")  A true and correct representative email, in which I am introduced as Plaintiff GORDON's "assistant in LA" is attached hereto as **Exhibit "A"** and incorporated herein by this reference as though fully set forth.

**DECLARATION OF LOTTI BLUEMNER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

6.     It was my primary job duty to maintain Plaintiff GORDON's Los Angeles Residence, as well as maintain and care for the vehicles Plaintiff GORDON kept there, specifically a convertible Bentley, a black Cadallac Escalade, and a green BMW, and to facilitate Plaintiff GORDON's, and his guest's, use of the vehicles and the Los Angeles Residence whenever they were in town.  I also coordinated Plaintiff GORDON's Los Angeles based travel plans, and coordinated his Los Angeles social calendar, as well as coordinated his transportation in and around Los Angeles.  I was trained by Travis Braha, who was Plaintiff GORDON's New York based personal assistant, and with whom I communicated with periodically as part of my job duties as Plaintiff GORDON's Los Angeles based personal assistant.  Travis Braha was already employed when I began work in May, 2012, and he was introduced to me by Plaintiff GORDON as his New York personal assistant.

7.     After I had already begun my employment as Plaintiff GORDON's personal assistant, in and around the middle of May, 2012, Plaintiff GORDON approached me with a Non-Disclosure Agreement, and demanded that I sign it.  I asked him what it was, and he responded that it was "a normal" non-disclosure agreement and that it was a routine document that I needed to sign in connection with my employment.  I understood Plaintiff GORDON's instructions to mean that I was required to sign the document as part of my employment as his personal assistant.  I signed the document with Plaintiff GORDON present, in Los Angeles, and without being given an opportunity to read or review it beforehand.

8.     On February 28, 2014 I filed an action in the Los Angeles Superior Court, Central District, Stanley Mosk Courthouse, Case Number BC 538111, alleging, among other things, hostile work environment, discrimination, wrongful termination in violation of public policy, intentional infliction of emotional distress, and unfair business practices in connection with my employment as Plaintiff GORDON's personal assistant, and my termination therefrom just a few weeks prior to the birth of my daughter (hereinafter

**DECLARATION OF LOTTI BLUEMNER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

referred to as the "California Action." A true and correct copy of the California Action is attached hereto as **Exhibit "B,"** and incorporated herein by this reference as though fully set forth.

9.  In connection with the California Action, and prior to filing the same, I received a right to sue letter in California.

10.  Plaintiff GORDON and ERGO (the named Defendants in the California Action,) did not timely appear in the California Action, and their defaults were taken on April 7, 2014 and April 17, 2014, respectively.

11.  On October 6, 2014, Plaintiffs GORDON and ERGO each filed motions for relief from default in the California Action. Plaintiffs' motions were granted, despite my opposition thereto, on January 27, 2015, after a contested evidentiary hearing held on January 14, 2015.

12.  Also on January 27, 2015, and in connection with the setting aside of their defaults, the court deemed Plaintiff GORDON and Plaintiff ERGO's answers, submitted concurrently with their motion to set aside default on October 6, 2015, filed as of that date.

13.  On February 13, 2015, I filed a motion for attorneys' fees in the California action in connection with Plaintiff GORDON and Plaintiff ERGO's Motions for Relief from Default, which was set for hearing on March 4, 2015. Plaintiff GORDON and Plaintiff ERGO's opposition was due to be filed on February 26, 2015.

14.  On February 27, 2015, Plaintiff GORDON filed a notice of removal, removing the California Action to the United States District Court for the Central District of California. A true and correct copy of Plaintiff GORDON's Notice of Removal in the California Action is attached hereto as **Exhibit "C,"** and incorporated herein by this reference as though fully set forth.

15.  Plaintiffs filed this instant action without notifying me of their intention to do so, despite the fact that they had already appeared in the California action, and

**DECLARATION OF LOTTI BLUEMNER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

1   without first attempting to bring their claims in the currently pending California Action,

2   in the form of a cross-complaint.

3          16.   The California Action is currently pending in the Central District of Los

4   Angeles, case number 2:15-cv-01392 (MMM)(AJWx).

5          17.   I filed a Motion for Remand, on the grounds that Plaintiff GORDON's

6   Notice of Remoal was untimely, on March 30, 2015, which is currently set for hearing on

7   June 15, 2015.

8          I declare under penalty of perjury of the laws of the State of California that the

9   foregoing is true and correct.

10         Executed on this 2nd day of April, 2015, at Los Angeles, California.

11

12   _____

13   Lotti Bluemner

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**4**

**DECLARATION OF LOTTI BLUEMNER IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS**

# Exhibit "A"



From: **Travis Ian Braha** <travisbraha@ncg.com>
Date: Wed, Jul 11, 2012 at 6:50 AM
Subject: Please meet
To: Zara Duffy <zara.duffy@gmail.com>, Lotti Bluemner <lotti10@gmail.com>

Zara and Lotti,

Please meet. Zara is Fisher's assistant and Lotti is our new assistant in LA.

Best,
Travis

# Exhibit "B"

conforming

1  Christian S. Molnar, Esq. (SBN 177665)
   Ashley M. Hunt, Esq. (SBN 292083)
2  **CHRISTIAN S. MOLNAR LAW CORPORATION**
   12400 Wilshire Boulevard, Suite 1180
3  Los Angeles, California 90025
   Telephone: (310) 820-9900
4  Facsimile: (310) 820-9926
   Email: christian@christiansmolnarlaw.com
5
   Attorneys for Plaintiff LOTTI BLUEMNER, an individual
6

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

FEB 28 2014

Sherri R. Carter, Executive Officer/Clerk
By: Amber Hayes, Deputy

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA,**

9          **FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

10

| | |
|---|---|
| 11  LOTTI BLUEMNER, an individual, | **Case No.:**   B C 5 3 8 1 1 1 |
| 12        Plaintiff, | **[Unlimited Jurisdiction]** |
| 13    vs. | **COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL** FOR: |
| 14  ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, | |
| 15 | |
| 16 | (1) **DISCRIMINATION IN VIOLATION OF FEHA (GOV. CODE §§ 12940);** |
| 17        Defendants. | |
| 18 | (2) **AIDING AND ABETTING VIOLATIONS OF FEHA (GOV. CODE § 12940(i));** |
| 19 | (3) **QUID PRO QUO HARASSMENT IN VIOLATION OF FEHA (GOV. CODE § 12940(j));** |

(1)  **DISCRIMINATION IN VIOLATION OF FEHA (GOV. CODE §§ 12940);**
(2)  **AIDING AND ABETTING VIOLATIONS OF FEHA (GOV. CODE § 12940(i));**
(3)  **QUID PRO QUO HARASSMENT IN VIOLATION OF FEHA (GOV. CODE § 12940(j));**
(4)  **HOSTILE WORK ENVIRONMENT HARASSMENT IN VIOLATION OF FEHA (GOV. CODE § 12940(j));**
(5)  **FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT IN VIOLATION OF FEHA (GOV. CODE § 12940(k));**
(6)  **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (CAL CONST. Art. 1, § 8);**
(7)  **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS,**
(8)  **NEGLIGENT INFLICTION OF**

1
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

(9)   **EMOTIONAL DISTRESS, AND UNFAIR BUSINESS PRACTICES (CAL. BUS. PROF. CODE § 17200, et seq.)**

**COMES NOW** Plaintiff LOTTI BLUEMNER, an individual (hereinafter referred to as "Plaintiff BLUEMNER,") and alleges as follows:

<u>**PARTIES**</u>

1.      Plaintiff BLUEMNER is now, and at all times mentioned herein was, an individual residing and doing business in the County of Los Angeles, State of California, and was a non-exempt employee of Defendants ERIK H. GORDON, an individual (hereinafter referred to as "Defendant GORDON,") and ERGO MEDIA GROUP, LLC, a Delaware limited liability company (hereinafter referred to as "Defendant ERGO,") (collectively "Defendants").

2.      Plaintiff BLUEMNER is informed and believes, and based upon such information and belief, herein alleges that Defendant ERGO is, and at all times herein mentioned was, a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business in the New York, and also conducting business in the County of Los Angeles, State of California through the residence of its principal, Defendant GORDON, in the City of Beverly Hills, County of Los Angeles, State of California, and employed and employs person in the same.

3.      Plaintiff BLUEMNER is informed and believes, and based upon such information and belief, herein alleges that at all times herein mentioned, Defendant GORDON was an officer, manger, owner, member and/or principal of Defendant ERGO and at all times relevant hereto completely controlled and dominated the same, and

4.      At all timers relevant hereto, Defendant GORDON maintained and, upon information and belief, does now maintain, a residence in the City of Beverly Hills, County of Los Angeles, State of California, and at all times relevant hereto resided in the same for significant portions of time.

5.      Plaintiff BLUEMNER does not know the true names of Defendant Does 1 through 20, inclusive, and therefore sues them by those fictitious names.  Plaintiff BLUEMNER is informed and believes, and on the basis of that information and belief alleges, that each of those Defendants was in some manner legally responsible for the events and happenings alleged in this complaint and for Plaintiff

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

1  BLUEMNER's damages.  The names, capacities, and relationships of Does 1 through 20 will be alleged

2  by amendment to this complaint when they are known.

3      6.      Plaintiff BLUEMNER is informed and believes and based thereon alleges that at all times

4  mentioned herein, the Defendants, and Does 1 through 20, inclusive, and each of them, were the agents

5  and employees of each of the remaining Defendants, and each of them, in doing the acts alleged in this

6  complaint, were acting within the purpose and scope of said agency and employment.

7      7.      Plaintiff BLUEMNER is informed and believes and based thereon alleges that there

8  exists, and at all times herein mentioned there existed, a unity of interest and ownership between

9  Defendant ERGO, and Does 1 through 20, inclusive, and each of them, on the one hand, and Defendant

10  GORDON, on the other, such that any individuality and separateness between Defendant ERGO, and

11  Does 1 through 20, inclusive, and each of them, on the one hand, and Defendant GORDON, on the

12  other, has ceased, and thus Defendant ERGO, and Does 1 through 20, inclusive, and each of them, is the

13  *alter ego* of Defendant GORDON, in that Defendant GORDON, completely controlled, dominated,

14  managed, and operated the limited liability company defendant and intermingled their assets to suit the

15  convenience of Defendant GORDON, by placing the assets of Defendant ERGO, and Does 1 through 20,

16  inclusive, and each of them, in the name of Defendant GORDON, and vice-versa, in order to evade

17  payment of the obligations owed to creditors, including Plaintiff BLUEMNER.  Adherence to the fiction

18  of the separate existence of Defendant ERGO, and Does 1 through 20, inclusive, and each of them, from

19  Defendant GORDON, would permit an abuse of the limited liability company privilege and would

20  sanction fraud and promote injustice in that they have transferred assets between themselves, without

21  consideration, and to others, without regard to actual legal or equitable title.

22      8.      Each Defendant is sued individually and as an agent, conspirator, aider and abettor,

23  employee and/or control-person for each of the other Defendants, and the liability of each Defendant

24  arises from the fact that it has engaged in all or part of the unlawful acts, plans, schemes, or wrongs

25  complained of herein and was acting within the course and scope of said agency, partnership,

26  conspiracy, and employment.

27  ///

28  ///

---

**3**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

## JURISDICTION AND VENUE

9.     The Court has personal jurisdiction over Defendants because they are residents of and/or doing business in the State of California and employed Plaintiff BLUEMNER and others in the State of California, and as such voluntarily subjected themselves to the laws of this state.

10.     This Court has subject matter jurisdiction over all causes of action asserted herein pursuant to Article VI, § 10 of the California Constitution, California Code of Civil Procedure § 410.10, by virtue of the fact that this is a civil action in which the matter in controversy, exclusive of interest, exceeds TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00), and because each cause of action asserted arises under the laws of the State of California or is subject to adjudication in the courts of the State of California.  No part of this complaint is preempted by federal law or challenges conduct within any federal agency's exclusive domain, and adjudication thereof has not been statutorily assigned to any other court of jurisdiction.

11.     Venue is proper in this Court in accordance with California Code of Civil Procedure § 395(a) because Defendant GORDON resides in the City of Beverly Hills, County of Los Angeles County and Defendants GORDON and ERGO conduct business in the County of Los Angeles, and employed and continues to employ persons in this state.  Moreover, venue is proper pursuant to California Government Code § 12965(b), because the unlawful business practices complained of herein were committed within the County of Los Angeles and, further because, the County of Los Angeles is the county in which Plaintiff BLUEMNER would have continued to work, but for the unlawful business practices complained of herein.

## FACTUAL ALLEGATIONS

12.     Prior to accepting employment with Defendant ERGO, Plaintiff BLUEMNER worked as a model and also worked as an executive assistant and as a personal assistant.

13.     In or about April, 2012, Plaintiff BLUEMNER, by the invitation of Defendant GORDON, attended a Bruce Springsteen concert with Defendant GORDON.  During their evening together in April, 2012, Defendant GORDON offered to employ Plaintiff BLUEMNER as his Los Angeles based personal assistant at an annual salary of NINTY THOUSAND AND NO/100 DOLLARS ($90,000.00), which included an annual bonus based on performance, as well as full health insurance

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

1  coverage, including medical, dental and vision plans. On that same evening in April, 2012, Plaintiff

2  BLUEMNER accepted the offer of employment of Defendant GORDON. Defendant GORDON

3  informed Plaintiff BLUEMNER on that same evening that he was dissatisfied with his current Los

4  Angeles based personal assistant, Ms. Rain Eventoff, but that he would need a couple of weeks to

5  transfer her to another position, and that after he accomplished the same, Plaintiff BLUEMNER could

6  commence work for Defendant GORDON and Plaintiff BLUEMNER agreed to the same.

7      14.    In or about the middle of the month of May, 2012, Plaintiff BLUEMNER commenced

8  work for Defendant GORDON as his Los Angeles based personal assistant. In or about mid-May, 2012,

9  when Defendant GORDON came to Los Angeles, Defendant GORDON requested Plaintiff

10  BLUEMNER entertain his friends Trish and Rob by showing them around the Los Angeles Area

11  because Defendant GORDON was busy. During that time, Plaintiff GORDON and several other persons

12  decided to take a trip to Las Vegas and Defendant GORDON suggested that Plaintiff BLUEMNER

13  attend as his "new" personal assistant.

14      15.    Between May, 2012 and September, 2012, Plaintiff BLUEMNER was paid directly by

15  Defendant GORDON via a series of wires of cash from his personal bank account.

16      16.    Beginning in or about September, 2012, Plaintiff BLUEMNER began to be paid via

17  direct deposit into her bank account from Defendant ERGO and was also enrolled into the employee

18  health benefit, life insurance and pension fund plans of Defendant ERGO.

19      17.    On or about May 26, 2012, while accompanying Defendant GORDON and others to Las

20  Vegas, as his personal assistant, Defendant GORDON and his guests procured various narcotics and

21  professional strippers at his hotel room. Defendant GORDON insisted that Plaintiff BLUEMNER fill

22  the hot tub in the master suite of his hotel room and that she join Defendant GORDON, his three (3)

23  friends and the hired stripper in the hot tub. Further, Defendant GORDON repeatedly directed Plaintiff

24  BLUEMNER to take off her bathing suit top while in the hot tub with Defendant GORDON, his friends,

25  and the stripper, and attempted to cajole her in to doing so by stating that "it was no big deal." Plaintiff

26  BLUEMNER felt obligated to join her new boss, Defendant GORDON, in the hot tub and further feared

27  she would lose her new job with him if she didn't. Plaintiff BLUEMNER did in fact get into the hot tub

28  in her bathing suit, but declined to remove her top. Subsequently, after everyone exited the hot tub,

5

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

1  Defendant GORDON asked Plaintiff BLUEMNER to perform a strip dance for one of his friends in the

2  bathroom of the master suite of Defendant GORDON's hotel room.  Plaintiff BLUEMNER declined

3  Defendant GORDON's request.

4      18.    At the time of her hiring, Defendants ERGO and GORDON represented to Plaintiff

5  BLUEMNER that her responsibilities as Defendant GORDON's Los Angeles based personal assistant

6  would include the following:

7          a.   Maintaining and overseeing the upkeep and condition of Defendant GORDON's

8               residence in Beverly Hills, California;

9          b.  Maintaining and overseeing the upkeep and condition of Defendant GORDON's vehicles

10               in Los Angeles, including a Bentley, a BMW 750, and a Cadillac Escalade;

11          c.   Overseeing the provision of personal services to Defendant GORDON in connection with

12               his residence in Beverly Hills, California and his vehicles which he kept in Los Angeles,

13               including, maids, repair persons, and automotive care;

14          d.   Keeping his residence stocked with food, beverages, alcohol, and various other items;

15          e.   Assisting in the coordinating of Defendant GORDON's schedule, appointments and

16               meetings when he was in Los Angeles;

17          f.   Making Defendant GORDON's residence and vehicles in Beverly Hills available for use

18               by visiting guests, friends, family members, and invitees of Defendant GORDON;

19          g.   Acting as a social liaison to Defendant GORDON, introducing him to persons involved

20               in the nightlife scene in Los Angeles and obtaining invitations and admission to various

21               social events, parties and nightclubs with prohibitive admissions policies;

22          h.   Travelling with Defendant GORDON throughout the United States and internationally

23               and acting as his personal assistant while travelling with him;

24          i.   To make various personal purchases for Defendant GORDON and his friends using a

25               credit card he supplied to her in her name, and

26          j.   Discharging the ordinary duties of a personal assistant of Defendant GORDON in the

27               conduct of his business;

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY
TRIAL**

1    19.    In reality, while Plaintiff BLUEMNER's responsibilities did at times include the above-

2 described tasks, which Plaintiff BLUEMNER at all times relevant hereto, faithfully and diligently

3 performed, Plaintiff BLUEMNER's responsibilities also included acting as Defendant GORDON's

4 *entre-vouz* to the Los Angeles social and nightlife scene, using her social connections and knowledge of

5 the Los Angeles social elite to help him procure admission to various nightclubs, parties, and social

6 events to which Defendant GORDON might not otherwise have been aware, or to which he might not

7 otherwise have been invited. Plaintiff BLUEMNER's actual responsibilities also included

8 accompanying Defendant GORDON and his friends and invitees to lunches and dinners at trendy

9 restaurants, parties, bars, night clubs, and birthday parties in Los Angeles, Las Vegas, and occasionally

10 New York City and/or Martha's Vineyard, as well as the Sundance Film Festival in Utah. Plaintiff

11 BLUEMNER's additional responsibilities also included assisting Defendant GORDON in pursuing girls

12 he was romantically interested in, which included taking those girls on shopping trips to purchase

13 personal items and gifts with the credit card he provided to Plaintiff BLUEMNER. During one of these

14 shopping trips, Plaintiff BLUEMNER, at Defendant GORDON's direction, spent tens of thousands of

15 dollars.

16    20.    When Defendant GORDON was in-town in Los Angeles, and when Plaintiff

17 BLUEMNER accompanied him to Las Vegas, New York, the Sundance Film Festival, and/or Martha's

18 Vineyard as part of her employment, she was "on-duty" and/or "on-call" at all times.

19    21.    Additionally, after commencing employment with Defendants ERGO and GORDON,

20 Plaintiff BLUEMNER quickly discovered that Defendant GORDON's main desire in employing

21 Plaintiff BLUEMNER, an attractive and socially connected model, was to use her as "eye-candy" and as

22 a "bait" to attract other attractive young women, who Defendant GORDON and his friends otherwise

23 would not have been able attract on their own. Defendant GORDON's apparent belief in utilizing

24 Plaintiff BLUEMNER in this manner was that if other attractive women saw that he and his friends were

25 with an attractive woman, these other women would be more receptive to his and his friends' overtures.

26 Essentially, Plaintiff BLUEMNER's role was to act as Defendant GORDON and his friends' "hot chick"

27 wing-woman.

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

22.     After Plaintiff BLUEMNER commenced work for Defendants GORDON and ERGO, she also quickly discovered that regardless of the milieu, whether in Los Angeles or elsewhere, that Defendant GORDON's *modus operandi*, consisted of trading upon his father's (one of the founders of Angelo & Gordon) wealth, fame, connections, and political capital by taking meetings during the day with his and his father's wealthy and politically connected friends, celebrities, and politicians, and then partying, drinking, and consuming various illegal drugs each night, including, but not limited to, "ecstasy" (MDMA); cocaine; marijuana; "Molly" (MDMA); and "special k" (Ketamine), prescription drugs such as oxycotin, and others, as well as regularly engaging strippers and prostitutes.  Quickly after the commencement of her employment, Defendant GORDON began directing Plaintiff BLUEMNER to pick up and pay for illegal drugs (with monies he provided), and accompany him and his friends to strip clubs.  On one occasion, in Las Vegas, Defendant GORDON directed Plaintiff BLUEMNER to arrange for strippers to come over to hotel rooms purchased by Defendant GORDON and to facilitate his and his friends' engagement of prostitutes at their hotel rooms.  In addition, Defendant GORDON routinely insisted that Plaintiff BLUEMNER "party" with Defendant GORDON and his friends as well be present when strippers and prostitutes were present.

23.     On many occasions while working for Defendants, Plaintiff BLUEMNER accompanied Defendant GORDON during his nights of drunken and drug-fueled debauchery and essentially "baby-sat" Defendant GORDON, who became so intoxicated at times during the nights and days of partying that he became susceptible to thievery and/or injury, monetarily or otherwise, by various unscrupulous persons and hangers-on who attempted to take advantage of Defendant GORDON's wealth while he was in an intoxicated, inebriated, and vulnerable state.  Plaintiff BLUEMNER often felt compelled to intervene, and in did in fact intervene, on multiple occasions to prevent such persons from taking advantage, financially and otherwise, of Defendant GORDON while he was unconscious and vulnerable.

24.     Almost immediately after she began her employment with Defendants, Plaintiff BLUEMNER was persistently subjected to unwanted flirtatious comments, references to her body parts, sexual advances, and occasional uninvited touching by Defendant GORDON.  In addition, Defendant GORDON regularly insisted that Plaintiff BLUEMNER join him and his friends, as well as strippers, in various hot tubs and baths, asked her to remove her top while she was in the hot tubs and/or baths,

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

1 requested that she perform "strip dances" for his friends, asked her to take pictures of her naked breasts

2 so that he could show his friends, requested massages from her, and requested, on multiple occasions,

3 that she lay in bed with him while he was intoxicated and "high" on various illegal narcotics and

4 prescription drugs such as oxycotin.  In fact, Defendant GORDON's lewd requests to Plaintiff

5 BLUEMNER to send him pictures of her naked breasts increased in frequency after she became

6 pregnant.  While Plaintiff BLUEMNER declined some of these requests, she felt compelled to

7 unwillingly comply with some of Defendant GORDON's aforementioned appeals, out of fear that she

8 would otherwise lose her job.

9     25.    On occasion, including on his birthday on December 8, 2012, in New York, New York,

10 Defendant GORDON insisted upon doing lines of cocaine off of Plaintiff BLUEMNER's exposed

11 breasts in front of multiple persons.  Again, Plaintiff BLUEMNER reluctantly acquiesced to Plaintiff

12 GORDON's demands because she was afraid that if she didn't do so, she would lose her job.

13     26.    Further, Defendant GORDON would at times send inappropriate texts of a sexual and/or

14 scandalous nature to Plaintiff BLUEMNER.

15     27.    At all times during her employment with Defendants GORDON and ERGO, Plaintiff

16 BLUEMNER faithfully and diligently executed her "official" responsibilities as Defendant GORDON's

17 assistant, and many of her "unofficial" responsibilities as well, in order to maintain her employment and

18 her favorable salary and benefit package, including health insurance.

19     28.    During the course of her employment, Defendant GORDON routinely praised Plaintiff

20 BLUEMNER and her execution of her job duties both in writing, to her face, with others present, and to

21 mutual friends and acquaintances of theirs.  In addition, in December, 2012, after she had been working

22 for the Defendants for over seven (7) months, Defendant GORDON rewarded her for her exceptional job

23 performance by giving her a holiday/end-of-the-year cash bonus in the sum of EIGHT THOUSAND

24 TWO HUNDRED FIFTY AND NO/100 DOLLARS ($8,250.00).

25     29.    At no time between the commencement of her employment in early May, 2012, through

26 her unlawful termination in July, 2013, did Plaintiff BLUEMNER receive any warnings or disapprovals,

27 written or otherwise, of her job performance; nor was she ever subject to any disciplinary action of any

28 sort.

9

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

30.     In or about December, 2012, Plaintiff BLUEMNER became pregnant.  Initially, Plaintiff BLUEMNER wasn't sure whether she would keep the baby or terminate her pregnancy, as she and the father of her baby were considering separating, and did eventually separate in March, 2013, and she was facing the challenges of being a single mother.  Her main concern was her and her baby's financial security, and her ability to provide for her child.  She determined that, if she was to continue with her pregnancy, she would require a larger apartment, with a second bedroom, which would necessitate an increase in her monthly rent from her current payment of ONE THOUSAND EIGHT HUNDRED AND NO/100 DOLLARS ($1,800.00).  Additionally, it was her intention, if she proceeded with the pregnancy, to take only a very brief leave of absence from her employment with Defendants, and immediately hire a nanny so she could return to her job with Defendants.  Plaintiff BLUEMNER realized that she could only afford a nanny and a larger apartment if she kept her employment with Defendants GORDON and ERGO and if her position of employment as Defendant GORDON's personal assistant was secure.

31.     In March of 2013, Plaintiff BLUEMNER, without initially disclosing her pregnancy to Defendant GORDON, met with Defendant GORDON at his residence in Beverly Hills, California for the specific purpose of discussing her long-term employment security with Defendants.  During their meeting, she informed Defendant GORDON that she was thinking of leasing a larger and significantly more expensive apartment, and inquired of Defendant GORDON whether he was happy with her job performance and whether she had long-term employment security with Defendants for the foreseeable future.  Defendant GORDON responded favorably, and stated to Plaintiff BLUEMNER that he was "very pleased" with her performance of her employment duties, that she was doing an "amazing job," that her job was absolutely secure, and that he intended to continue employing her for the foreseeable future and that she had long-term employment security with the Defendants.  Plaintiff BLUEMNER thanked Defendant GORDON for his reassurances and informed him of her intention to immediately lease a significantly more expensive apartment.

32.     Reassured by Defendant GORDON's responses but wanting to have additional security, Plaintiff BLUEMNER thereafter requested that James Heckman, a mutual friend of her's and Defendant GORDON's, speak directly with Defendant GORDON while he was still in Los Angeles and pose the

1   same questions to him as were asked in her meeting with Defendant GORDON.  The mutual friend,

2   James Heckman, thereafter arranged to meet Defendant GORDON in Los Angeles at the Sawyer Club in

3   or around March, 2013.  During their meeting, Mr. Heckman posed the same or substantially similar

4   questions to Defendant GORDON that Plaintiff BLUEMNER had posed to him days earlier and

5   Defendant GORDON's responses were essentially identical; he praised Plaintiff BLUEMNER's

6   performance and voiced his intention to continue to employ her for the foreseeable future.  Thereafter,

7   Mr. Heckman reported back to Plaintiff BLUEMNER the good news regarding her job performance and

8   the reaffirmation of her long-term job security with the Defendants.

9          33.     In reliance upon the affirmative representations and affirmations of Defendant GORDON

10   to both Plaintiff BLUEMNER and their mutual friend, James Heckman, in their separate meetings with

11   Defendant GORDON in March, 2013, Plaintiff BLUEMNER decided to commit to her pregnancy, and

12   the financial obligations it would entail, and lease the larger and more expensive apartment in

13   anticipation of the arrival of her child.  Plaintiff BLUEMNER signed a lease for her new apartment for a

14   one (1) year term on March 26, 2013 which term expired on March 31, 2014.  The monthly base rent for

15   hew new apartment was THREE THOUSAND TWO HUNDRED FIFTY and NO/100 DOLLARS

16   ($3,250.00).  In addition to the increased monthly base rent for the new apartment, Plaintiff

17   BLUEMNER was required to also pay for utilities, trash, and water charges, and an increased renters

18   insurance rate, which brought the monthly total for her new apartment to nearly FOUR THOUSAND

19   AND NO/100 DOLLARS ($4,000.00).

20          34.     Shortly thereafter, at the end of March, 2013, Plaintiff BLUEMNER informed Defendant

21   GORDON that she was pregnant.  Defendant GORDON's initial reaction was that he was decidedly

22   underwhelmed with this news, and did not respond in an overly warm or positive manner.  While

23   Defendant GORDON belatedly congratulated Plaintiff BLUEMNER on her pregnancy, almost

24   immediately, Plaintiff BLUEMNER experienced a marked change in treatment from Defendant

25   GORDON.  He began to exclude her from events and activities that he previously always insisted that

26   she participate in as part of her employment.  For instance, whenever Defendant GORDON came to Los

27   Angeles, Plaintiff BLUEMNER and her friends that she introduced to Defendant GORDON would be

28   invited out to dinner with Defendant GORDON, which would almost always be followed by partying

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

and night-clubbing.  Once she disclosed that she was pregnant, Defendant GORDON would invite Plaintiff BLUEMNER's friends out to dinner with him and his friends, but would not invite Plaintiff BLUEMNER.  While Defendant GORDON would tell her that he would "meet up" with her later, he would invariably fail to do so.  In addition, Defendant GORDON had invited Plaintiff BLUEMNER to accompany him on a long-planned trip to Las Vegas in May of 2013, to celebrate the one (1) year wedding anniversary of his and BLUEMNER's mutual friends who had been married there during Plaintiff BLUEMNER's and Defendant GORDON's first trip there together as his employee in May, 2012.  By contrast, now, Defendant GORDON did not take Plaintiff BLUEMNER with him to Las Vegas in May of 2013.  Mutual friends, who were present on the trip, said that Defendant GORDON commented on the reasons for Plaintiff BLUEMNER's absence, reporting that Defendant GORDON stated that "Las Vegas was no place for a pregnant girl," especially, when the attendees were planning on staying up "partying for forty-eight (48) hours straight."

35.     On or about the end of June or early July, 2013, Defendant GORDON left to travel to Iberian isle of Ibiza, a trip on which it would not have been uncommon for Plaintiff BLUENMER to have joined his entourage as part of her regularly expected employment obligations.  However, on this occasion, Defendant GORDON traveled to Ibiza without Plaintiff BLUEMNER.  Again, Plaintiff BLUEMNER was informed by mutual friends that according to Defendant GORDON, he didn't want to bring a "pregnant chick" to Ibiza.  By then, Plaintiff BLUEMNER, who was more than seven (7) months pregnant, and visibly showing, and therefore no longer the suitable "eye candy" that Defendant GORDON required, and instead had become a hindrance to Defendant GORDON's party lifestyle.

36.     Beginning in May, 2013, though now largely excluded by Defendant GORDON from his social calendar and activities, Plaintiff BLUEMNER continued to faithfully perform all of her other responsibilities for Defendants.  In addition, Plaintiff BLUEMNER took on the additional task of assisting Defendant GORDON in searching for a new residence in Los Angeles that he would either purchase or rent.  Plaintiff BLUEMNER diligently assisted Defendant GORDON in the search for his new residence.  She spent countless hours on a near daily basis searching internet listings of suitable residences and meeting with several brokers on a non-exclusive basis, as required by Defendant

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

1  GORDON, looking at and reviewing potential properties for Defendant GORDON to either purchase or

2  rent.

3      37.    In or about late May, 2013 or early June, 2013, Defendant GORDON began pursuing a

4  new girl, Malea.  At Defendant GORDON's direction, Plaintiff BLUEMNER took her on several multi-

5  thousand dollar shopping sprees, as well as made Defendant GORDON's Beverly Hills residence and

6  vehicles available to her whenever she requested the same.

7      38.    On or about June, 2013, Defendant GORDON, Malea, and others, departed for Ibiza

8  where they remained until their return on or about July, 2013.  Prior to their departure, Defendant

9  GORDON and Malea informed Plaintiff BLUEMNER that upon their return, Malea would be moving

10  into Defendant GORDON's residence in Beverly Hills, California.  Defendant GORDON directed

11  PLAINTIFF BLUEMNER to perform several tasks to prepare the residence to accommodate this

12  change, including purchasing a storage unit for Malea.  Plaintiff BLUEMNER diligently performed for

13  Defendants all the actions Defendant GORDON requested in connection with Malea moving into his

14  Beverly Hills residence.

15      39.    Immediately after his return to the United States from his vacation in Ibiza, and on July

16  11, 2013, Defendant GORDON sent an email to Plaintiff BLUEMNER--who at the time was six (6)

17  weeks away from giving birth to her baby--informing her that he was terminating her, *effective*

18  *immediately*, and that her last paycheck would be issued on Monday, July 15, 2013.  Further, in this

19  same communication, Defendant GORDON notified Plaintiff BLUEMNER that her health insurance

20  benefits would also be terminated as of the end of that month.  In his termination letter, Defendant

21  GORDON falsely accused Plaintiff BLUEMNER of "stealing" from him by purportedly conspiring with

22  multiple real estate agents to receive a "kick-back" on the commission payable to them in connection

23  with his potential purchase of a new residence in Los Angeles, California if the sale was consummated.

24  He also falsely accused her of allowing the hot water at his Beverly Hills residence to lapse for four (4)

25  days and failing to fix the garage door opener to his residence in his Cadillac Escalade.  In addition, he

26  accused her of failing to perform minor various duties such as keeping the air-conditioning in his

27  Beverly Hills residence at a too-warm temperature (Plaintiff BLUEMNER kept the Beverly Hills condo

28  air conditioning thermostat at 70 degrees, as directed), and of failing to change one (1) light bulb thereat

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

1   prior to his latest arrival in Los Angeles.  It is noteworthy that the ceilings in Defendant GORDON's

2   condo are approximately fifteen (15) feet tall, and require a ladder to replace, which Plaintiff

3   BLUEMNER required help in doing in her late-stage pregnancy.  Further, he complained that she had

4   driven his Escalade one one occasion without his advance permission, and thereby put additional

5   mileage on the vehicle (despite previously giving her permission to do so, and, in fact, *requiring* her to

6   do so as part of her employment duties in maintaining the vehicle), and failed to "re-program" the same

7   (even though it required a professional re-programmer, who had not been retained for that purpose).

8   Finally, Defendant GORDON falsely accused of her of buying herself personal items at the apple store

9   with the credit card he issued to her.

10       40.     None of the false allegations made by Defendant GORDON were truthful or accurate,

11   other than: (1) that she was unable to replace one (1) light-bulb in his residence due to the physical

12   limitations created by the advanced stage of her pregnancy, and (2) that she had on a single occasion, on

13   a weekend day, used his Escalade without telling him in advance, although he had on numerous previous

14   occasions told her to freely use his vehicles, had never before complained of her doing so, and had, in

15   fact, required her to drive the same as part of her job duties to maintain, care for, and keep in good

16   working order all of Defendant GORDON's Los Angeles vehicles.

17       41.     Plaintiff BLUEMNER, while in shock at the "out-of-the-blue" termination letter, as well

18   as it's timing - just six (6) weeks before her pregnancy delivery due date - immediately contacted the real

19   estate agents she had been working on Defendant GORDON's behalf, and asked them to contact

20   Defendant GORDON and inform him that she had never requested, sought, or agreed to accept any

21   "kick-back" from any of them in connection with his potential purchase or rental of a new residence in

22   Los Angeles, California.  Each of the agents immediately confirmed that no such request had been made

23   by Plaintiff BLUEMNER, and confirmed that no agreement regarding the same had ever been entered

24   into, and further agreed that they would immediately contact Defendant GORDON informing him of the

25   same.

26       42.     Plaintiff BLUEMNER is informed and believes, and based on that information and belief,

27   herein alleges, that each of the real estate agents immediately contacted Defendant GORDON and

28   informed him that Plaintiff BLUEMNER had never requested any "kick-back" of their potential

---
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

from events and activities that he previously always insisted that she participate in as part of her employment;

b. Immediately upon notifying Defendant GORDON of her pregnancy, being unnecessarily restricted in performing her previous job duties of traveling with Defendant GORDON on his vacations as his personal assistant;

c. Immediately upon notifying Defendant GORDON of her pregnancy, being entirely restricting her from his "social calendar" and evening social activities, such as dinner with mutual friends;

d. Defendant GORDON's commenting, to mutual friends, that Plaintiff BLUEMNER could no longer attend such events and engagements, or travel with Defendant GORDON on vacation, because such places and events were "not places for a pregnant chick."

e. Terminating her a mere six (6) weeks before she was to give birth, and attempting to terminate her health and medical insurance immediately, such that her medical expenses related to her pregnancy and the birth of her child would no longer be covered by Defendants;

f. Arguing that her termination was based upon dishonest interactions and "thievery" relating to a real estate transaction, which was quickly proven to be false, and also attempting to claim her termination arose out of the non-performance and/or poor performance of various trifling and negligible employment duties such as failure to replace a light bulb and allegedly not calling a plumber quickly enough.

48.     None of the false allegations made by Defendant GORDON were accurate, nor grave enough to warrant such a dramatic swing in Defendant GORDON's opinion of her job performance, which evidences the fact that such "reasons" were only a ruse to mask the true reason for her termination –her pregnancy.

49.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their willful, knowing and intentional violations of FEHA, Plaintiff BLUEMNER sustained and continues to sustain substantial losses in earnings and other benefits.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

50.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER suffered and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage in a sum according to proof.

51.     Plaintiff BLUEMNER is informed and believes and based thereon alleges that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

52.     Plaintiff BLUEMNER has incurred and continues to incur legal expenses and attorneys' fees and costs, including expert witness fees, entitling Plaintiff BLUEMNER to relief in accordance with FEHA § 12965(b).  Plaintiff BLUEMNER is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

## SECOND CAUSE OF ACTION

### (For Aiding and Abetting Discrimination in Violation of FEHA (Gov. Code §§ 12940(i)) Against Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, and each of them)

53.     Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 52, inclusive, *supra,* and incorporate the same herein as if fully set forth.

54.     At all applicable times mentioned in the Complaint, Defendants, and Does 1 through 20, inclusive, and each of them, regularly employed five (5) or more persons bringing Defendants, and Does 1 through 20, inclusive, and each of them, within the provisions of the California *Fair Employment and Housing Act* ( "FEHA"), which proscribe certain enumerated forms of discrimination.

55.     Plaintiff BLUEMNER has adequately exhausted all of her administrative remedies under FEHA and obtained "right to sue" letters from the Department of Fair Employment and Housing against Defendants, and Does 1 through 20, inclusive, and each of them.  A true and correct copy of the "right to sue" letter Plaintiff BLUEMNER obtained from the Department of Fair Employment and Housing is attached hereto as **Exhibit "A"** and incorporated herein by reference as though fully set forth.

56.     Defendants, and Does 1 through 20, inclusive, and each of them, was aware of, and encouraged, aided, abetted, incited, compelled, and/or coerced the unlawful employment actions set forth in the above paragraphs, as proscribed the provisions of the California *Fair Employment and Housing Act* ( "FEHA"), Section 12940(i).  Specifically, Plaintiff BLUEMNER suffered adverse employment actions by and through the Defendants, and Does 1 through 20, inclusive, and by and through those encouraged or compelled by them, or tacitly and actively encouraged by them, including, but not limited to, her unlawful termination, for the sole reason of her sex, her gender, and the fact that she was pregnant.

57.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their willful, knowing and intentional violations of FEHA, Plaintiff BLUEMNER has sustained and continues to sustain substantial losses in earnings and other benefits.

58.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage in a sum according to proof.

59.     Plaintiff BLUEMNER is informed and believes and based thereon alleges that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

60.     Plaintiff BLUEMNER has incurred and continues to incur legal expenses and attorneys' fees and costs, including expert witness fees, entitling Plaintiff BLUEMNER to relief in accordance with FEHA § 12965(b).  Plaintiff BLUEMNER is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

///

///

///

///

---

**18**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

69.     Plaintiff BLUEMNER has incurred and continues to incur legal expenses and attorneys' fees and costs, including expert witness fees, entitling Plaintiff BLUEMNER to relief in accordance with FEHA § 12965(b).  Plaintiff BLUEMNER is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

### FOURTH CAUSE OF ACTION

**(For Hostile Work Environment Sexual Harassment on the basis of Sex or Gender in Violation of FEHA (Gov. Code §§ 12940(j)) Against Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, and each of them)**

70.     Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 69, inclusive, *supra,* and incorporate the same herein as if fully set forth.

71.     At all applicable times mentioned in the Complaint, Defendants, and Does 1 through 20, inclusive, and each of them, regularly employed one (1) or more persons bringing Defendants, and Does 1 through 20, inclusive, and each of them, within the provisions of the California *Fair Employment and Housing Act* ( "FEHA") proscribing harassment.

72.     Plaintiff BLUEMNER has adequately exhausted all of her administrative remedies under FEHA and obtained "right to sue" letters from the Department of Fair Employment and Housing against Defendants, and Does 1 through 20, inclusive, and each of them.  A true and correct copy of the "right to sue" letter Plaintiff BLUEMNER obtained from the Department of Fair Employment and Housing is attached hereto as **Exhibit "A"** and incorporated herein by reference as though fully set forth.

73.     Plaintiff BLUEMNER suffered severe and pervasive sexual harassment on the basis of her sex, her gender, and on the basis of her pregnancy, in violation of FEHA during the course of her employment with Defendants such that it altered and interfered with her working conditions and created a hostile and abusive work environment and insufferable working conditions.  Such sexual harassment was directed both at Plaintiff BLUEMNER herself and at others in her presence, and was so severe and pervasive that permeated her workplace and substantially interfered with her working environment.

74.     During the course of her employment, Defendants, and Does 1 through 20, inclusive, and each of them, took actions of a sexually harassing nature towards Plaintiff BLUEMNER and in her

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

1   presence which caused and continued the existence of an oppressive and hostile work environment.

2   Specifically, Plaintiff BLUEMNER witnessed or was victim of actions or comments of a sexually

3   harassing nature, including but not limited to:

4       a.  Regularly requiring Plaintiff BLUEMNER, as part of her job duties as his professional

5           assistant, to procure professional strippers and/or hookers and prostitutes for Defendant

6           GORDON and/or his friends in hotel rooms, and to facilitate his and his friends access to

7           prostitutes and strippers;

8       b.  Insisting Plaintiff BLUEMNER join Defendant GORDON, his friends, and/or strippers in

9           hot tubs or baths;

10      c.  Requesting or directing Plaintiff BLUEMNER to remove her top in the hot tub, together

11          with Defendant GORDON, his friends, and strippers, and attempting to cajole or pressure

12          her into complying;

13      d.  Requesting or directing Plaintiff BLUEMNER to perform a "strip tease" dance for

14          Defendant GORDON's in the bathroom of a hotel master suite;

15      e.  Regularly requiring Plaintiff BLUEMNER, as part of her job duties as his professional

16          assistant, to accompany him to bars, restaurants, and clubs to help him pursue women, act

17          as "eye-candy" and as "bait" to attract other women to their party;

18      f.  Requiring Plaintiff BLUEMNER to accompany Defendant GORDON and his friends to

19          strip clubs;

20      g.  Insisting that Plaintiff BLUEMNER be present and "party" with Defendant GORDON

21          and his friends when strippers and prostitutes were present;

22      h.  Insisting on doing lines of "Coke" off of Plaintiff BLUEMNER's naked breasts in front

23          of multiple persons.

24      i.  Regularly requiring Plaintiff BLUEMNER, as part of her job duties as his professional

25          assistant, to take the women that Defendant GORDON was romantically interested in on

26          shopping sprees, or otherwise giving them access to Defendant GORDON's assets,

27          properties, amenities in Los Angeles, California;

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

j.   Persistently and continuously subjecting Plaintiff BLUEMNER to unwanted flirtatious comments, sexually charged advances, references to her body parts, and even unwanted touching or contact from Defendant GORDON;

k.   On occasion requesting Plaintiff BLUEMNER take photos of her naked breasts so that Defendant GORDON could show his friends.  Such requests increased in frequency once Plaintiff BLUEMNER became pregnant, as did comments relating to her breasts.

l.   Requesting that Plaintiff BLUEMNER touch Defendant GORDON, or give him massages.

m.   Requesting that she lay in bed with Defendant GORDON

n.   At times sending Plaintiff BLUEMNER inappropriate, scandalous, or sexually charged text messages.

Such actions were so severe and/or pervasive so as to materially alter Plaintiff BLUEMNER's work environment and render it intolerable.

75.   As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage in a sum according to proof.

76.   Plaintiff BLUEMNER is informed and believes and based thereon alleges that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

77.   Plaintiff BLUEMNER has incurred and continues to incur legal expenses and attorneys' fees and costs, including expert witness fees, entitling Plaintiff BLUEMNER to relief in accordance with FEHA § 12965(b).  Plaintiff BLUEMNER is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

///

///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

**FIFTH CAUSE OF ACTION**

**(For Failing to Prevent Discrimination and/or Harassment on the basis of Sex or Gender in Violation of FEHA (Gov. Code §§ 12940(k)) Against Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, and each of them)**

78.    Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 77, inclusive, *supra,* and incorporate the same herein as if fully set forth.

79.    At all applicable times mentioned in the Complaint, Defendants, and Does 1 through 20, inclusive, and each of them, regularly employed five (5) or more persons bringing Defendants, and Does 1 through 20, inclusive, and each of them, within the provisions of the California *Fair Employment and Housing Act* ( "FEHA"), which proscribe certain enumerated forms of discrimination and harassment.

80.    Plaintiff BLUEMNER has adequately exhausted all of her administrative remedies under FEHA and obtained "right to sue" letters from the Department of Fair Employment and Housing against Defendants, and Does 1 through 20, inclusive, and each of them.  A true and correct copy of the "right to sue" letter Plaintiff BLUEMNER obtained from the Department of Fair Employment and Housing is attached hereto as **Exhibit "A"** and incorporated herein by reference as though fully set forth.

81.    Plaintiff BLUEMNER suffered severe and pervasive sexual harassment on the basis of her sex, her gender, and on the basis of her pregnancy, in violation of FEHA during the course of her employment with Defendants.

82.    Defendants, and Does 1 through 20, inclusive, and each of them, failed to take all reasonable steps necessary to prevent discrimination from happening or occurring in violation of Gov. Code § 12940(k).

83.    As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their willful, knowing and intentional violations of FEHA, Plaintiff BLUEMNER has sustained and continues to sustain substantial losses in earnings and other benefits.

84.    As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation,

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

1  emotional distress and mental and physical pain and anguish, all to her damage in a sum according to

2  proof.

3      85.    Plaintiff BLUEMNER is informed and believes and based thereon alleges that the

4  aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free

5  from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil

6  Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish

7  and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

8      86.    Plaintiff BLUEMNER has incurred and continues to incur legal expenses and attorneys'

9  fees and costs, including expert witness fees, entitling Plaintiff BLUEMNER to relief in accordance with

10  FEHA § 12965(b).  Plaintiff BLUEMNER is presently unaware of the precise amount of these expenses

11  and fees and prays leave of court to amend this complaint when the amounts are more fully known.

12                    **SIXTH CAUSE OF ACTION**

13  **(For Wrongful Termination in Violation of Public Policy (Cal. Const., Art. 1, § 8) Against**

14  **Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H.**

15  **GORDON, an individual, and Does 1 through 20, inclusive, and each of them)**

16      87.    Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in

17  paragraphs 1 through 86, inclusive, above and incorporate the same herein in full.

18      88.    At all times mentioned in this complaint, Article I, Section 8 of the California

19  Constitution, proscribing, *inter alia*, discrimination on the basis of sex, was in full force and effect and

20  was binding on Defendants.  In addition, pursuant to the FEHA, it is against public policy and unlawful

21  to terminate an employee because of the employee's sex and/or gender.

22      89.    Plaintiff BLUEMNER is informed and believes and based thereon alleges that her sex

23  and/or her gender was the motivating factor in Defendants, and Does 1 through 20, inclusive, and each

24  of their decision to terminate her.  Such discrimination is in violation of the public policy of the State of

25  California as reflected in the California Constitution, Article I, Section 8, and additionally reflected in

26  FEHA's proscription of the same, and has resulted in damages and injury to Plaintiff BLUEMNER as

27  alleged herein.

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

90.    As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their willful, knowing and intentional violations of FEHA, Plaintiff BLUEMNER has sustained and continues to sustain substantial losses in earnings and other benefits.

91.    As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage in a sum according to proof.

92.    Plaintiff BLUEMNER is informed and believes and based thereon alleges that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

## SEVENTH CAUSE OF ACTION

### (For Intentional Infliction of Emotional Distress Against Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, and each of them)

93.    Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 92, inclusive, *supra,* and incorporate the same herein in full.

94.    Defendant, and Does 1 through 20, inclusive, and each of them, persisted in subjecting Plaintiff BLUEMNER to unwelcome verbal, visual and physical conduct of a sexual nature in the workplace, as alleged hereinabove, in a manner that was outrageous, offensive, heinous and beyond the standards of decency tolerated in a civilized society.

95.    Defendants, and Does 1 through 20, inclusive, and each of them intended to cause Plaintiff BLUEMNER emotional distress and/or acted with reckless disregard of Plaintiff BLUEMNER's rights, under the California Constitution and FEHA, to be free of such outrageous and unlawful conduct and with reckless disregard of the probably that Plaintiff BLUEMNER would suffer emotional distress, knowing that Plaintiff BLUEMNER was present as the victim of the conduct when it occurred.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

96.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their conduct, Plaintiff BLUEMNER has suffered severe emotional distress and Defendants, and Does 1 through 20, inclusive, and each of their conduct was a substantial factor in causing Plaintiff BLUEMNER's severe emotional distress.

97.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage in a sum according to proof.

98.     Plaintiff BLUEMNER is informed and believes and based thereon alleges that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

## EIGHTH CAUSE OF ACTION

**(For Negligent Infliction of Emotional Distress Against Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, and each of them)**

99.     Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 98, inclusive, *supra*, and incorporate the same herein in full.

100.     Defendant, and Does 1 through 20, inclusive, and each of them, persisted in subjecting Plaintiff BLUEMNER to unwelcome verbal, visual and physical conduct of a sexual nature in the workplace, as alleged hereinabove, in a manner that was outrageous, offensive, heinous and beyond the standards of decency tolerated in a civilized society.

101.     Defendants, and Does 1 through 20, inclusive, breached a duty to Plaintiff BLUEMNER to, as her employer, refrain from such conduct and protect her from being subjected to the same while in their employ. Defendants, and Does 1 through 20, inclusive, and each of them, acted intentionally or without regard to a reasonably knowable risk of harm to Plaintiff BLUEMNER and her rights, the California Constitution and FEHA, to be free of such harm.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

102.    As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their conduct, Plaintiff BLUEMNER has suffered severe emotional distress and Defendants, and Does 1 through 20, inclusive, and each of their conduct was a substantial factor in causing Plaintiff BLUEMNER's severe emotional distress.

103.    As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage in a sum according to proof.

## NINTH CAUSE OF ACTION

**(For Unfair Business Practices (Cal. Bus. Prof. Code §§ 17200, _et seq._) Against Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, and each of them)**

104.    Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through103, inclusive, _supra_, and incorporate the same herein in full.

105.    Plaintiff BLUEMNER brings this action to recover unpaid wages, on behalf of herself, all other similarly situated, and the general public.

106.    The Unfair Competition Law, Business and Professions Code Section 17200 _et seq._, defines unfair competition to include any "unfair," "unlawful" or "deceptive" business practice, and provides for injunctive and restitutionary relief for violations.

107.    Defendants, and Does 1 through 20, inclusive, and each of them, have committed numerous unfair, unlawful or deception business practices as further alleged hereinabove, including but not limited to: terminating Plaintiff BLUENMNER for an unlawful and discriminatory purpose, wrongfully terminating Plaintiff in contravention of public policy, aiding and abetting in the unlawful discharge of Plaintiff, subjecting Plaintiff to a hostile and oppressive working environment by exposing Plaintiff to in appropriate and sexual comments and actions which pervaded her working conditions, requiring, either expressly or impliedly, Plaintiff to engage or participate in acts of a sexual nature as a condition of her continued employment, failing to prevent sexual harassment, engaging in or allowing to

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

1  exist the intentional infliction of emotional distress on Plaintiff BLUEMNER, and in engaging in or

2  allowing to exist the negligent infliction of emotional distress on Plaintiff BLUEMNER.

3      108.    The actions of Defendants, and Does 1 through 20, inclusive, and each of them, detailed

4  herein against Plaintiff BLUEMNER constitute unfair, unlawful and deceptive business practices, and

5  further, constitute actions for which restitutionary relief is available.

6      109.    As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their

7  actions, Plaintiff BLUEMNER has suffered injury in fact and lost money or property.

8      110.    Plaintiff BLUEMNER is informed and believes and based thereon alleges that

9  Defendants, and Does 1 through 20, inclusive, and each of them, continue to engage in the practices

10 described herein and are continuing and will continue to benefit financially from these unlawful and

11 unfair practices unless enjoined by this Court from doing so.

12     111.    Plaintiff BLUEMNER is informed, believes, and based thereon alleges, that the unlawful

13 and unfair business practices conducted by Defendants, and Does 1 through 20, inclusive, and each of

14 them, are ongoing and present a threat and likelihood of continuing discrimination against Plaintiff

15 BLUEMNER and other members of the general public.  Accordingly, Plaintiff BLUEMNER seeks

16 declaratory and injunctive relief and restitution, as permitted under the Act.

17     112.    As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their

18 unfair business practices, Plaintiff BLUEMNER has sustained and continues to sustain substantial losses

19 in earnings and other benefits.

20     113.    Plaintiff BLUEMNER has incurred and continues to incur legal expenses and attorneys'

21 fees and costs, including expert witness fees, entitling Plaintiff BLUEMNER to relief in accordance with

22 California Code of Civil Procedure § 1021.5.  Plaintiff BLUEMNER is presently unaware of the precise

23 amount of these expenses and fees and prays leave of court to amend this complaint when the amounts

24 are more fully known.

25                           **PRAYER FOR RELIEF**

26     **WHEREFORE**, Plaintiff BLUEMNER prays for judgment against Defendants, and Does 1

27 through 20, inclusive, and each of them as follows:

28

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

1.    At all applicable times mentioned in the Complaint, Defendants, and Does 1 through 20, inclusive, and each of them, regularly employed five (5) or more persons bringing Defendants, and Does 1 through 20, inclusive, and each of them, within the provisions of the California *Fair Employment and Housing Act* ( "FEHA"), which proscribe certain enumerated forms of discrimination.

2.    At all applicable times mentioned in the Complaint, Defendants, and Does 1 through 20, inclusive, and each of them, regularly employed one (1) or more persons bringing Defendants, and Does 1 through 20, inclusive, and each of them, within the provisions of the California *Fair Employment and Housing Act* ( "FEHA") proscribing specific types of harassment.

### As to the First through Third Causes of Action

1.    For restitution of all monies due Plaintiff BLUEMNER including back pay, front pay, lost employment benefits and other compensation, and other special damages according to proof;

2.    For general damages to compensate Plaintiff BLUEMNER for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

3.    For exemplary and punitive damages;

4.    For all applicable injunctive relief as allowed by law;

5.    For an award of interest, including prejudgment interest, at the legal rate;

6.    For an award of attorneys' fees;

7.    For costs of suit incurred, and

8.    For such other and further relief as the Court may deem appropriate.

### As to the Fourth Cause of Action

1.    For general damages to compensate Plaintiff BLUEMNER for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

2.    For exemplary and punitive damages;

3.    For all applicable injunctive relief as allowed by law;

4.    For an award of interest, including prejudgment interest, at the legal rate;

5.    For an award of attorneys' fees;

6.    For costs of suit incurred, and

7.    For such other and further relief as the Court may deem appropriate.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

**As to the Fifth Cause of Action**

1.      For restitution of all monies due Plaintiff BLUEMNER including back pay, front pay, lost employment benefits and other compensation, and other special damages according to proof;

2.      For general damages to compensate Plaintiff BLUEMNER for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

3.      For exemplary and punitive damages;

4.      For all applicable injunctive relief as allowed by law;

5.      For an award of interest, including prejudgment interest, at the legal rate;

6.      For an award of attorneys' fees;

7.      For costs of suit incurred, and

8.      For such other and further relief as the Court may deem appropriate.

**As to the Sixth Cause of Action**

1.      For restitution of all monies due Plaintiff BLUEMNER including back pay, front pay, lost employment benefits and other compensation, and other special damages according to proof;

2.      For general damages to compensate Plaintiff BLUEMNER for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

3.      For exemplary and punitive damages;

4.      For all applicable injunctive relief as allowed by law;

5.      For an award of interest, including prejudgment interest, at the legal rate; and

6.      For such other and further relief as the Court may deem appropriate.

**As to the Seventh Cause of Action**

1.      For general damages to compensate Plaintiff BLUEMNER for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

2.      For exemplary and punitive damages;

3.      For all applicable injunctive relief as allowed by law;

4.      For an award of interest, including prejudgment interest, at the legal rate; and

5.      For such other and further relief as the Court may deem appropriate.

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

### As to the Eighth Cause of Action

1.      For general damages to compensate Plaintiff BLUEMNER for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

2.      For all applicable injunctive relief as allowed by law;

3.      For an award of interest, including prejudgment interest, at the legal rate; and

4.      For such other and further relief as the Court may deem appropriate.

### As to the Ninth Cause of Action

1.      For an order finding that Defendants, and Does 1 through 20, inclusive, and each of them, violated California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq.*;

2.      For an award to Plaintiff BLUEMNER of all actual, consequential, and incidental damages subject to proof at trial, including but not limited to the amount of wages illegally withheld, all damages for wages not promptly paid, penalties pursuant to statute, and all premium pay, civil penalties, and other penalties owed to Plaintiff BLUEMNER;

3.      For an award to Plaintiff BLUEMNER of interest on all monies owed from the day such money was due to Plaintiff BLUEMNER;

4.      For an order requiring Defendants to pay restitution to Plaintiff BLUEMNER due to Defendants unlawful and/or unfair activities pursuant to Business and Professions Code sections 17200, *et seq.*;

5.      For permanent injunctive relief requiring the Defendants to cease and desist from all unlawful and/or unfair activities pursuant to Business and Professions Code sections 17200, *et seq.*,

6.      For an award of attorneys' fees;

7.      For costs of suit incurred, and

8.      For such other relief as this Court may deem proper.

Dated: February 28, 2014

Christian S. Molnar Law Corporation

Christian S. Molnar, Esq., attorneys for
Plaintiff LOTTI BLUEMNER

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

1

### REQUEST FOR JURY TRIAL

2   Plaintiff hereby demands trial by jury.

3   Dated: February 28, 2014                    **Christian S. Molnar Law Corporation**

4

5

6                                      Christian S. Molnar, Esq., attorneys for
Plaintiff LOTTI BLUEMNER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

33

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

# Exhibit "A"



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GOVERNOR EDMUND G. BROWN JR.
DIRECTOR PHYLLIS W. CHENG

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TTY 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Sep 26, 2013

Lotti Bluemner
9663 Santa Monica Boulevard, #162
Beverly Hills, CA 90210

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 166125-69796
Right to Sue: Bluemner / Ergo Media Capital, LLC, Erik Gordon

Dear Lotti Bluemner:

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective Sep 26, 2013 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

**This letter is also your Right to Sue notice.** According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commision (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

Enclosures
cc: Ergo Media Capital, LLC Gordon

# Exhibit "C"

1   Jason S. Mills (Bar No. 225126)
    Teri E. Kirkwood (Bar No. 128241)
2   MORGAN, LEWIS & BOCKIUS LLP
    300 South Grand Avenue
3   Twenty-Second Floor
    Los Angeles, CA  90071-3132
4   Tel: 213.612.2500 / Fax: 213.612.2501
    *tkirkwood@morganlewis.com*
5
    Attorneys for Defendants
6   ERGO MEDIA CAPITAL, LLC and
    ERIK H. GORDON
7

8

9             UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11

12   LOTTI BLUEMNER, an individual,       Case No. 2:15-CV-1392

13            Plaintiff,       **DEFENDANT ERIK H.**
                          **GORDON'S NOTICE OF**
14           vs.            **REMOVAL OF ACTION TO**
                          **THE UNITED STATES**
15   ERGO MEDIA CAPITAL, LLC, a    **DISTRICT COURT FOR THE**
    Delaware limited liability company;   **CENTRAL DISTRICT OF**
16   ERIK H. GORDON, an individual, and  **CALIFORNIA**
    DOES 1 through 20, inclusive,
17                        **[28 U.S.C. §§ 1332, 1441, and 1446]**

18            Defendants.

19                        [Filed Concurrently With
                        Declaration of Erik H. Gordon]

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF REMOVAL OF DEFENDANT ERIK GORDON

DB1/ 82246322.4

# TABLE OF CONTENTS

|  |  | **Page** |
|---|---|---|
| I. | SUMMARY OF COMPLAINT | 1 |
| II. | THE REMOVAL IS TIMELY | 11 |
| III. | THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION | 12 |
| | A. Diversity of Citizenship Exists | 12 |
| | B. The Amount in Controversy Requirement Is Satisfied | 14 |
| IV. | THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED | 17 |
| V. | CONCLUSION | 19 |

| | |
|---|---|
| 1 | |

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Armstrong v. Church of Scientology Int'l*
    243 F.3d 546 (9th Cir. 2000) .................................................................... 12

*Boon v. Allstate Ins. Co.*
    229 F. Supp. 2d 1016 (C.D. Cal. 2002) .................................................. 12

*D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra* (1st Cir. 2011)
    661 F3d 124 .......................................................................................... 13

*Egan v. Premier Scales & Sys.*
    237 F. Supp. 2d 774 (W.D. Ky. 2002) .................................................... 16

*Fristos v. Reynolds Metals Co.*
    615 F.2d 1209 (9th Cir. 1980) ................................................................ 14

*Galt G/S v. JSS Scandinavia*
    142 F. 3d 1150 (9th Cir. 1998) .............................................................. 15

*Gibson v. Chrysler Corp.*
    261 F.3d 927 (9th Cir. 2001) .......................................................... 15, 16

*Guglielmino v. McKee Foods Corp.*
    506 F.3d 696 (9th Cir. 2007) ................................................................ 16

*Hunt v. Washington State Apple Advertising Comm'n*
    432 U.S. 333 (1977) .............................................................................. 15

*Korn v. Polo Ralph Lauren Corp.*
    536 F.Supp.2d 1199 (E.D. Cal. 2008) .................................................... 15

*Luckett v. Delta Airlines, Inc.*
    171 F.3d 295 (5th Cir. 1999) ................................................................ 14

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.* (1999)
    526 U.S. 344, 119 S.Ct. 1322 .............................................................. 11

*Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.* (11th Cir. 2004)
    374 F3d 1020 ........................................................................................ 13

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3

*Sanchez v. Monumental Life Ins. Co.*
    102 F.3d 398 (9th Cir. 1996)......................................................... 14

4

5

*Simmons v. PCR Tech.*
    209 F. Supp. 2d 1029 (N.D. Cal. 2002)...................................... 16

6

7

*State Farm Mut. Auto. Ins. Co. v. Dyer*
    19 F.3d 514 (10th Cir. 1994)........................................................ 12

8

9

*Washington v. Hovensa LLC*
    652 F.3d 340 (3rd Cir. 2011)....................................................... 12

10

**FEDERAL STATUTES**

11

28 U.S.C. § 1332 ......................................................................... 12, 13, 14

12

13

28 U.S.C. §§ 1332 and 1441 ................................................................ 17

14

28 U.S.C. §§ 1332, 1441, and 1446 ...................................................... 1

15

28 U.S.C. §§ 1332, 1441(a), (b), 1446(b), 1446(c)(1)........................ 12

16

28 U.S.C. § 1332(a) ............................................................... 1, 14, 17

17

28 U.S.C. § 1441(a) .................................................................. 14, 17

18

28 U.S.C. § 1446(a) .............................................................................. 18

19

28 U.S.C. § 1446(b) .............................................................................. 17

20

28 U.S.C. § 1446(d) ...................................................................... 17, 18

21

**CALIFORNIA STATUTES**

22

23

Cal. Bus. Prof. Code §§ 17200, et seq. .............................................. 11

24

California Code of Civil Procedure § 437(b) ...................................... 10

25

California Government Code § 12965(b) ............................................ 17

26

**OTHER STATUTES**

27

Gov. Code § 12940(i) ......................................................................... 11

28

Gov. Code § 12940(a) ......................................................................... 11

-iii-

1
2

# TABLE OF AUTHORITIES
(continued)

3

Page

Gov. Code § 12940(j)..................................................................................... 11

4

Gov. Code § 12940(k)..................................................................................... 11

5

**OTHER AUTHORITIES**

6

Cal. Const., Article 1, § 8................................................................................ 11

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1      **TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL**

2 **DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER**

3 **ATTORNEYS OF RECORD:**

4      **PLEASE TAKE NOTICE** that Defendant Erik H. Gordon ("Gordon" or

5 "Defendant"), by and through his counsel, hereby removes the above-entitled action

6 from the Superior Court of California for the County of Los Angeles, to the United

7 States District Court for the Central District of California pursuant to 28 U.S.C. §§

8 1332, 1441, and 1446. This Court has original subject matter jurisdiction over

9 Plaintiff Lotti Bluemner's lawsuit under 28 U.S.C. § 1332(a) because complete

10 diversity exists (Plaintiff is a California citizen, while each Defendant is not a

11 California citizen), and the amount in controversy is alleged to exceed $75,000.

12 **I.**     **SUMMARY OF COMPLAINT**

13     1.     On February 28, 2014, Plaintiff filed a civil action in the Superior

14 Court of the State of California for the County of Los Angeles, entitled *Lotti*

15 *Bluemner v. ErGo Media Capital, LLC, a Delaware limited liability company; Erik*

16 *H. Gordon, an individual, and Does 1 through 20, inclusive,* Case Number

17 BC538111 ("Complaint").

18     2.     The Demand For Jury Trial; Summons; Complaint; Civil Case Cover

19 Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of

20 Case Assignment; and Voluntary Efficient Litigation Stipulations were served upon

21 National Registered Agents, Inc., the agent for service of process for Defendant

22 ErGo Media Capital, LLC, in Dover, Delaware on March 5, 2014. On March 5,

23 2014, the agent for service of process forwarded the documents to Brent Cox, Esq.

24 of the Sloss Law Firm in New York on behalf of ErGo Media.[1]

25    [1] For reasons set forth in Defendant ErGo Media's successful Motion for

26    Mandatory Relief From Default Based on an Attorney Affidavit of Fault,

27    Defendant ErGo Media never received these papers that were forwarded to the
   Sloss Law Firm in New York.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

NOTICE OF REMOVAL OF DEFENDANT ERIK GORDON
DB1/ 82246322.4

3.      The Summons; Complaint; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Assignment; and Voluntary Efficient Litigation Stipulations were invalidly served by substitute service upon Defendant Erik H. Gordon, an Individual, on March 7, 2014 in Beverly Hills, California.  Defendant Gordon maintains that at that time and on that date he did not live at the Beverly Hills, California address where substitute service was allegedly made and denies being served with the summons and complaint.[2]

4.      The Demand For Jury Trial; Summons; Complaint; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location which Defendants obtained from the Superior Court file in this case are attached hereto as **Exhibit A**.[3]

5.      The Proof of Service of Summons on Erik Gordon that Plaintiff filed in the superior court on March 11, 2014 is attached hereto as **Exhibit B.**[4]

6.      Default was entered against ErGo Media Capital, LLC on April 7, 2014. (A true and correct copy obtained from the superior court file of the Proof of Service of Summons and Complaint on ErGo Media is attached hereto as **Exhibit C** and of the Request for Entry of Default as to ErGo Media is attached hereto as **Exhibit D**.)

7.      On April 15, 2014, the Clerk in the Superior Court issued a Notice of Case Management Conference to the Plaintiff setting the Case Management

---

[2] For the reasons set forth in Defendant Gordon's successful motion for relief from default, Defendant Gordon has never received this packet of pleadings that was invalidly served at that Beverly Hills, California address.

[3] Defendants obtained a copy of the summons and complaint from the superior court file in September 2014 when they became aware that this action had been filed and ostensibly served.

[4] Again, Defendant Gordon was never validly served with service of process in this matter.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 82246322.4   NOTICE OF REMOVAL OF DEFENDANT ERIK GORDON

1    Conference for June 25, 2014. (A true and correct copy of the Clerk's Notice of

2    Case Management Conference obtained from the superior court file is attached

3    hereto as **Exhibit E**.)

4         8.     Default was entered against Erik H. Gordon on April 17, 2014. (A true

5    and correct copy of the Request for Entry of Default as to Erik Gordon is attached

6    hereto as **Exhibit F**.)[5]

7         9.     No default judgment was ever entered against either Defendant Erik

8    Gordon or ErGo Media.

9         10.    On or about May 1, 2014, Plaintiff served Notice of Intent to Seek

10    Punitive Damages in the amount of Ten Million ($10,000,000.00) against

11    Defendant Gordon and Defendant ErGo Media Capital. A true and correct copy of

12    the Notice of Intent to Seek Punitive Damages Defendants obtained from the

13    Superior Court is attached as **Exhibit G**.[6]

14         11.    On or about May 16, 2014, Plaintiff served a Notice of Case

15    Management Conference Hearing for the June 25, 2014 case management

16    conference.[7] A true and correct copy of the Notice filed in Superior Court on May

17    19, 2014 is attached hereto as **Exhibit H**.

18         12.    On June or about June 6, 2014, Plaintiff filed a Case Management

19

20    [5] Defendants were never served with a Notice of Entry of Default and no such

21    notice is contained in the Superior Court file.

22    [6] Defendant ErGo Media Capital never received this notice from the Sloss Law

23    Firm and Defendant Gordon was never validly served with this Notice as set forth
above.

24    [7] As with the previous documents ostensibly served up to this point in this case,

25    neither defendant received this document. As noted above, Defendant Gordon was
never served because he did not live at the service address. The Sloss Law Firm

26    did not forward this notice to Defendant ErGo Media as established in the motion

27    for relief from default. Defendant obtained this copy from the superior court file in
this matter.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DB1/ 82246322.4   NOTICE OF REMOVAL OF DEFENDANT ERIK GORDON

1   Statement in superior court, but did not serve it on any Defendant. (A true and

2   correct copy of the Statement obtained from the superior court file is attached

3   hereto as **Exhibit I**.)

4         13.   At the Case Management Conference on June 25, 2014, the Court

5   ordered the Plaintiff to file the default prove-up documents by July 31, 2014 and set

6   the matter for an Order to Show Cause re: default for August 25, 2014.  Notice was

7   deemed waived. (A true and correct copy of the Court's Minute Order that

8   Defendant obtained from the superior court file is attached hereto as **Exhibit J**.)

9         14.   On August 25, 2014, the Court continued the Order to Show Cause Re:

10  Default to September 22, 2014 and further ordered that the default prove-up

11  documents be submitted by September 10, 2014.  Plaintiff was ordered to give

12  notice. (A true and correct copy of the Court's Minute Order that Defendant

13  obtained from the superior court file is attached hereto as **Exhibit K**.)

14        15.   On or about August 26, 2014, Plaintiff served a "NOTICE OF

15  RULING AT ORDER TO SHOW CAUSE HEARING RE: FAILURE TO FILE

16  DEFAULT JUDGEMENT [sic] PACKAGE." (A true and correct copy of the

17  Notice of Ruling contained in the Superior Court file is attached hereto as **Exhibit

18  L**.)

19        16.   On August 29, 2014, Plaintiff filed a Proof of Service with the superior

20  court regarding service of the Statement of Damages on Defendant ErGo Media,

21  ostensibly on August 13, 2014.  (A true and correct copy of the "Proof of Service of

22  Summons" for the Statement of Damages that Defendant obtained from the

23  Superior Court file is attached hereto as **Exhibit M**.)

24        17.   On or about September 2, 2014, Plaintiff's Statement of Damages was

25  received by mail by Defendant ErGo Media's agent for service of process, National

26  Registered Agents, Inc., who forwarded the document to ErGo Media Capital in

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

1   New York, New York.[8]  Plaintiff's Statement of Damages in which she claims

2   Special Damages in the amount of $376,730.00, general damages in the amount of

3   $3,000,000.00 and punitive damages in the amount of $10,000,000.00 establishes

4   that the amount in controversy in this matter exceeds $75,000.  A true and correct

5   copy of Plaintiff's Statement of Damages is attached as **Exhibit N**. (Declaration of

6   Erik H. Gordon In Support of the Notice of Removal of Defendant Erik H. Gordon

7   (hereinafter "Gordon Decl." ¶s 3, 6, 7; **Exhibit N**.)

8        18.    On September 10, 2014, in the Superior Court Plaintiff filed a

9   Statement of Damages, dated August 5, 2015, directed to Defendant Erik Gordon.

10  A true and correct copy of this Statement of Damages Defendant obtained from the

11  Superior Court file is attached hereto as **Exhibit O**.[9]

12       19.    Also on September 10, 2014, Plaintiff filed in the Superior Court a

13  second Request for Entry of Default as to Defendant Erik Gordon, dated September

14  8, 2014.  The copy Defendant obtained from the Superior Court file shows that

15  default was entered pursuant to this request on September 10, 2014. (A true and

16  correct copy of the 9-10-14 Request to Enter Default of Erik Gordon that Defendant

17  obtained from the court file is attached hereto as **Exhibit P**.)

18       20.    On September 11, 2014, in the Superior Court Plaintiff filed a

19  Statement of Damages, dated August 5, 2015, directed to Defendant ErGo Media

20  Capital, LLC. A true and correct copy of this Statement of Damages Defendant

21  obtained from the Superior Court file is attached hereto as **Exhibit Q**.

22       21.    On September 11, 2014, Plaintiff also filed a second Request for Entry

23

24  [8] ErGo Media had submitted a change of address in July 2014 and this notice
    forwarded by National Registered Agents was the first pleading ErGo actually
25  received in this matter. (Gordon Decl.

26  [9] Defendant Gordon never received this Statement of Damages, which was
    ostensibly served by personal service at the Beverly Hills address where he did not
27  live at that time.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DB1/ 82246322.4   NOTICE OF REMOVAL OF DEFENDANT ERIK GORDON

1  of Default as to ErGo Media, dated September 8, 2014. The copy Defendant

2  obtained from the Superior Court file shows that default was NOT entered as

3  requested because default had previously been entered on April 7, 2014.  Attached

4  to this rejected request was a Notice of Rejection Default/Clerk's Judgment. (A true

5  and correct copy of the 9-11-14 rejected Request to Enter Default of ErGo Media

6  and the attached Notice of Rejection that Defendant obtained from the court file is

7  attached hereto as **Exhibit R**.)

8       22.    On September 22, 2014, the Order to Show Cause Re: Default was

9  called for hearing, counsel for Plaintiff being the only one appearing.  The matter

10  was continued to November 7, 2014 and notice was deemed waived. (A true and

11  correct copy of the Court's Minute Order that Defendant obtained from the superior

12  court file is attached hereto as **Exhibit S**.)

13       23.    On October 6, 2014, Defendant Erik H. Gordon filed a Motion for

14  Relief from Default set to be heard on November 7, 2014, on the grounds that

15  Defendant Gordon was never served with the Summons and Complaint in this

16  matter.  (**Exhibits T through W**, attached.)[10]

17       24.    On October 6, 2014, Defendant ErGo Media Capital, LLC also filed a

18  Motion for Mandatory Relief from Default set to be heard on November 7, 2014,

19  based on an attorney affidavit of fault on the basis that ErGo Media never received

20  actual notice of this action in time to respond to the complaint. (**Exhibits X**

21

22

23

24

25  [10] Defendant's motion included the following:  (i) Notice of Motion and Motion for
    Relief From Default (**Exhibit T**); (ii) Declaration of Erik H. Gordon in Support

26  (**Exhibit U**); (iii) Declaration of Teri E. Kirkwood in Support (**Exhibit V**); and

27  (iv) Defendant Erik H. Gordon's [Proposed] Answer to Plaintiff's Unverified
    Complaint (**Exhibit W**).

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

DB1/ 82246322.4  NOTICE OF REMOVAL OF DEFENDANT ERIK GORDON

1   **through BB,** attached.)[11]

2   25.   On October 27, 2014, Plaintiff served her "OMNIBUS OPPOSITION

3   OF PLAINTIFF LOTTI BLUEMNER TO DEFENDANT ERGO MEDIA

4   CAPITAL LLC'S MOTION FOR MANDATORY RELIEF FROM DEFAULT

5   AND DEFENDANT ERIK H. GORDON'S MOTION FOR RELIEF FROM

6   DEFAULT; DECLARATION OF LOTTI BLUEMNER AND ASHLEY M.

7   HUNT, ESQ., IN SUPPORT THEREOF."  (A true and correct copy of Plaintiff's

8   Opposition served on Defendants is attached hereto as **Exhibit CC**.)

9   26.   On October 31, 2014, Defendants filed and served the Reply by

10  Defendants ErGo Media Capital, LLC to Plaintiff's Omnibus Opposition to

11  Motions for Relief From Default. (A true and correct copy of Defendants' Reply is

12  attached hereto as **Exhibit DD**.)

13  27.   Also on October 31, 2014, Defendants filed Objections by Defendants

14  to Evidence Submitted By Plaintiff In Opposition to Defendants' Motions for

15  Relief From Default. (A true and correct copy of Defendants' Objections is attached

16  hereto as **Exhibit EE**.)

17  28.   On November 7, 2014, the Order to Show Cause Re: Default, as well

18  as both Defendants' Motions for Relief from Default were called for hearing. The

19  Court issued a tentative ruling to grant both motions for relief from default.

20  Plaintiff requested an evidentiary hearing to present additional evidence and

21  testimony in opposition to both motions for relief from default, which evidentiary

22  hearing was scheduled for January 14, 2015. (A true and correct copy of the Court's

23  ──────────────────

[11] Defendant ErGo's Motion included the following: (i) Notice of Motion and

24  Motion for Mandatory Relief from Default (**Exhibit X**); (ii) Attorney Declaration

of Fault by Jacqueline Eckhouse, Esq. (**Exhibit Y**); (iii) Declaration of Erik H.

25  Gordon In Support of Motion for Mandatory Relief (**Exhibit Z**); (iv) Declaration

of Teri E. Kirkwood In Support of Motion for Mandatory Relief from Default

26  (**Exhibit AA**); and (v) Defendant ErGo Media Capital, LLC's [Proposed] Answer

27  to Plaintiff's Unverified Complaint (**Exhibit BB**).

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

1   Minute Order that Defendant obtained from the Court file is attached hereto as

2   **Exhibit FF**.)

3        29.    A true and correct copy of the Reporter's Transcript of Proceedings on

4   Friday November 7, 2014, that Defendants received from the court reporter, is

5   attached hereto as **Exhibit GG**.

6        30.    On December 12, 2014, pursuant to the Clerk's Application to Vacate

7   and Order dated September 25, 2014, the Court issued an Order vacating the

8   (second) Default of Erik H. Gordon that had been entered on September 10, 2014.

9   The Clerk requested the vacation of the default because the default was previously

10   entered on April 17, 2014. (A true and correct copy of the Clerk's Application and

11   the Order vacating the second default of Erik Gordon that Defendant obtained from

12   the Court file is attached hereto as **Exhibit HH**.)

13        31.    On January 13, 2014, the day before the evidentiary hearing on

14   Defendants' motions for relief from default, Plaintiff served "PLAINTIFF LOTTI

15   BLUEMNER'S REQUEST FOR WRITTEN STATEMENT OF DECISION

16   AFTER CONTESTED EVIDENTIARY HEARING ON DEFENDANT ERIK H.

17   GORDON'S AND DEFENDANT ERGO MEDIA CAPITAL'S MOTIONS FOR

18   RELIEF FROM DEFAULT." (A true and correct copy of the Request for Written

19   Statement served on Defendants is attached hereto as **Exhibit II**)

20        32.    On January 14, 2015, the court held the contested evidentiary hearing

21   on Defendants' motions.  Plaintiff's Counsel, Ashley Hunt was sworn in and

22   testified for the Plaintiff and Plaintiff was sworn and testified on her own behalf.

23   Plaintiff's exhibits were marked for identification, but no copies were provided to

24   the Court Clerk and were not tagged.  Plaintiff's exhibits were not admitted into

25   evidence. After the evidentiary hearing on Defendants' respective Motions for

26   Relief from Default, the matter was deemed submitted to the Court and notice was

27   waived.  (A true and correct copy of the Court's Minute Order Defendants obtained

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

1    from the Court file is attached hereto as **Exhibit JJ**.)

2    33.    On the afternoon of January 14, 2014, *after* the evidentiary hearing had

3    concluded, Plaintiff served on Defendants "DECLARATION OF ASHLEY M.

4    HUNT, ESQ., REGARDING THE AUTHENTICITY OF BUSINESS RECORDS

5    PRODUCED IN RESPONSE TO SUBPOENAS *DUCES TECEM* [sic]"[12] (A true

6    and correct copy of the Declaration of Ashley Hunt served on Defendants is

7    attached hereto as **Exhibit KK**.  A true and correct copy of the Proof of Service by

8    mail as to the Declaration of Ashley M. Hunt, Esq. is attached hereto as **Exhibit**

9    **LL**.)

10    34.    A true and correct copy of the Reporter's Transcript of Proceedings on

11    January 14, 2015, that Defendants received from the court reporter, is attached

12    hereto as **Exhibit MM**.

13    35.    On January 27, 2015, the Superior Court issued its ruling granting both

14    Defendants' respective motions for relief from default.  The Court issued an order

15    vacating the default as to ErGo Media and Erik H. Gordon, individually.  The Court

16    further ordered that the Answers to the Complaint by Defendants ErGo Media and

17    Erik Gordon, which had been submitted to the Court with the respective Motions

18    for Relief from Default, were deemed filed as of January 27, 2015.  The clerk

19    mailed notice to Defendants, which notice was received February 2, 2015.  A true

20    and correct copy of the Minute Order attaching the Ruling and Order vacating the

21    defaults of Defendants ErGo Media and Erik Gordon and deeming the answers filed

22    as of January 27, 2015 is attached hereto as **Exhibit NN**.

23    36.    A true and correct copy of the Notice of Ruling On Defendants ErGo

24

25    [12] Ms. Hunt had attempted to testify at the evidentiary hearing regarding documents

26    Plaintiff apparently hoped would be introduced into evidence.  However the court
sustained Defendants' hearsay objections on the grounds that none of the

27    documents were authenticated and Ms. Hunt was not competent to authenticate
any of the documents presented.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

1    Media Capital, LLC's and Erik Gordon's Motions for Relief From Default and

2    Notice of Case Management Conference served and filed by Defendants is attached

3    hereto as **Exhibit OO**.

4         37.    A true and correct copy of the Answer by Defendant Erik Gordon

5    deemed filed on January 27, 2015 is attached hereto as **Exhibit W**. A true and

6    correct copy of the Answer by Defendant Ergo Media deemed filed on January 27,

7    2015 is attached hereto as **Exhibit BB**.

8         38.    As part of the Order issued by the Court, the parties were to meet and

9    confer concerning Plaintiff's anticipated motion for attorneys' fees.  A true and

10   correct copy of the Notice of Agreed Upon Briefing Schedule for Plaintiff's Motion

11   for Attorneys' Fees On Granting of Defendants ErGo Media Capital, LLC's and

12   Erik Gordon's Motions for Relief From Default, which Defendants filed in Superior

13   Court on February 9, 2015, is attached hereto as **Exhibit PP**.

14        39.    The Notice of Motion and Motion of Plaintiff Bluemner for An Order

15   Granting Attorneys' Fees and Costs Pursuant to California Code of Civil Procedure

16   Section 437(b), and Declaration of Christian S. Molnar in Support Thereof, that

17   Plaintiffs served on Defendants, is attached hereto as **Exhibit QQ**.

18        40.    The Notice of Posting Jury Fees of Plaintiff Lotti Bluemner that

19   Plaintiff served by mail on Defendants on February 19, 2015, is attached hereto as

20   **Exhibit RR**.

21        41.    The Plaintiff's Case Management Statement served by Plaintiff on

22   Defendants by mail on February 19, 2015, is attached hereto as **Exhibit SS**.

23        42.    The Declaration of Erik Gordon (hereafter "Gordon Decl.") in support

24   of Defendant's removal is concurrently filed herewith.

25        43.    Plaintiff's Complaint seeks to recover compensatory damages,

26   emotional distress damages, punitive and exemplary damages, attorneys' fees and

27   costs, costs of suit incurred, injunctive relief, interest, and "such other and further

28

1   relief as the Court may deem appropriate" based on the following causes of action:

2   (1) unlawful discharge/discrimination in violation of the California Fair

3   Employment and Housing Act ("FEHA") (Gov. Code section 12940(a)) against

4   both Defendants; (2) for aiding and abetting discrimination in violation of FEHA

5   (Gov. Code section 12940(i)) against both Defendants; (3) for quid pro quo sexual

6   harassment on the basis of sex or gender in violation of FEHA (Gov. Code section

7   12940(j)) against both Defendants; (4) for hostile work environment sexual

8   harassment on the basis of sex or gender in violation of FEHA (Gov. Code section

9   12940(j)) against both Defendants; (5) for failing to prevent discrimination and/or

10   harassment on the basis of sex or gender in violation of FEHA (Gov. Code section

11   12940(k)) against both Defendants; (6) for wrongful termination in violation of

12   public policy (Cal. Const., Art.1, §8) against both Defendants; (7) for intentional

13   infliction of emotional distress against both Defendants; (8) for negligent infliction

14   of emotional distress against both Defendants; and (9) for unfair business practices

15   (Cal. Bus. Prof. Code sections 17200, et seq.) against both Defendants.

16   **II.     THE REMOVAL IS TIMELY**

17           44.     Defendant Gordon was never validly served with service of process in

18   this matter. The thirty-day time to remove requires valid service of summons and

19   complaint. (*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.* (1999) 526 U.S.

20   344, 354, 119 S.Ct. 1322, 1329.)  Defendant Gordon has removed this action within

21   thirty (30) days of the Superior Court's January 27, 2015 ruling vacating the

22   Defendants' respective defaults on the basis of an attorney declaration of fault as to

23   ErGo Media and on the basis that Defendant Gordon was never served with

24   summons and complaint in this matter, which ruling was served by mail. The Court

25   ruled that the Defendants' respective answers were deemed filed as of January 27,

26   2015, at which time Defendant Gordon became a party to this matter. Plaintiff's bad

27   faith opposition to Defendant's relief from default prevented Defendant from

28

1  appearing in this matter any earlier than January 27, 2015.  Therefore, Defendant's

2  removal based on diversity is timely under 28 U.S.C. §§ 1332, 1441(a), (b),

3  1446(b), 1446(c)(1). No previous Notice of Removal has been filed or made with

4  this Court for the relief sought herein.

5  **III.    THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION**

6      45.    This action could have been originally filed in this Court pursuant to

7  28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff

8  and Defendant ErGo Media and Defendant Gordon, and the amount in controversy

9  as alleged by Plaintiff's individual claims in her Statement of Damages exceeds

10  $75,000, exclusive of interest and costs.

11      **A.    Diversity of Citizenship Exists**

12          **1.    Plaintiff Is A Citizen Of California.**

13      46.    "An individual is a citizen of the state in which he is domiciled . . . ."

14  *Boon v. Allstate Ins. Co.,* 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing

15  *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes

16  of diversity of citizenship jurisdiction, citizenship is determined by the individual's

17  domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology*

18  *Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss,* 797 F.2d 747, 750 (9th

19  Cir. 1986)).  Evidence of continuing residence creates a presumption of domicile.

20  *Washington v. Hovensa LLC,* 652 F.3d 340, 345 (3rd Cir. 2011); *State Farm Mut.*

21  *Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 519 (10th Cir. 1994). Once the removing party

22  produces evidence supporting that presumption, the burden shifts to the other party

23  to come forward with contrary evidence, if any, in order to dispute domicile. *Id.*

24      47.    Plaintiff avers that she "is now, and at all times mentioned herein was,

25  an individual residing and doing business in the County of Los Angeles, State of

26  California." Complaint (**Exh. A**), ¶ 1.  Defendant's payroll and personnel records

27  from May 2012 when Plaintiff was hired until Plaintiff's employment with

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

1  Defendants terminated on or about July 11, 2013, show Plaintiff's home address

2  during that period as being continuously in Los Angeles, California.  Gordon Decl.

3  ¶s 3-4. Thus, Plaintiff was domiciled in California, and is therefore a citizen of

4  California for purposes of diversity jurisdiction in this matter.

5         2.     **Defendant Erik H. Gordon Is Domiciled in the State of**

6  **Florida and is a Citizen of the State of Florida.**

7        48.    As Established in Defendant's Motion for Relief from Default, which

8  was granted on January 27, 2015, individual defendant Erik Gordon is domiciled in

9  the State of Florida and is a citizen of the State of Florida. (See **Exhibits T-W** .)

10  Erik Gordon has been domiciled in Florida since the fall of 2013 and was so

11  domiciled and a citizen at the time this action was filed on February 28, 2014.  He

12  is still domiciled and a citizen of Florida at the time of this Notice of Removal.

13  (Gordon Decl. ¶s 1,2)

14

15         3.     **Defendant ErGo Media Capital, LLC Is A Citizen of**

16  **Florida.**

17        49.    For diversity purposes, a limited liability company's citizenship is

18  determined by examining the citizenship of each member of the company. (28

19  U.S.C. § 1332; *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra* (1st Cir.

20  2011) 661 F3d 124, 125-126, *Rolling Greens MHP, L.P. v. Comcast SCH Holdings,*

21  *L.L.C.* (11th Cir. 2004) 374 F3d 1020, 1021-1022)  Erik Gordon is the sole member

22  of ErGo Media Capital, LLC. (Gordon Decl. ¶ 1.)

23        50.    ErGo Media Capital is currently and has been, since this action was

24  commenced on February 28, 2014, a limited liability company.  Because Erik

25  Gordon is the only member, ErGo Media Capital is domiciled and a citizen of

26  Florida for diversity purposes in this action.  Gordon Decl. ¶s 1, 2 ,3 5.  Currently

27  and prior to and since the commencement of this action, ErGo has had its

28  headquarters and principal place of business in New York. *Id.* ¶ 1, 3, 5.  Plaintiff

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

1   further so alleges in the Complaint: "Plaintiff ... herein alleges that Defendant

2   ERGO is, and at all time herein mentioned was, a limited liability company duly

3   organized and existing under the laws of the State of Delaware, with its principal

4   place of business in the [sic] New York . . . ." Complaint (**Exh. A**) ¶ 2.  Plaintiff's

5   allegation is relevant only in that, for purposes of diversity, Plaintiff alleges that

6   Defendant ErGo Media is not a citizen of the State of California, and thereby does

7   not defeat diversity.

8        51.   Defendant ErGo is not now and was not at the time of the filing of the

9   lawsuit, a citizen of California within the meaning of the Acts of Congress relating

10   to the removal of causes.  Defendant ErGo Media has never been organized or

11   registered under the laws of the State of California.  ErGo Media is now, and ever

12   since this action commenced on February 28, 2014, has been, a citizen of Florida

13   for diversity purposes. 28 U.S.C.§ 1332(a).

14        52.   Pursuant to 28 U.S.C. § 1441(a), the residences of fictitious and

15   unknown defendants should be disregarded for the purposes of establishing removal

16   jurisdiction under 28 U.S.C. § 1332.  *Fristos v. Reynolds Metals Co.,* 615 F.2d

17   1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a

18   removal petition).  Thus, the inclusion of "Doe" defendants in Plaintiff's Complaint

19   has no effect on the ability to remove.

20        53.   Accordingly, Plaintiff is a citizen of a state different from that of the

21   only proper defendants.  Complete diversity therefore exists between the parties.

22       **B.**     **The Amount in Controversy Requirement Is Satisfied.**
23

24        54.   Removal is proper if, from the allegations of the Complaint and the

25   Notice of Removal, it is more likely than not that the amount in controversy

26   exceeds $75,000.  *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 403-04 (9th

27   Cir. 1996); *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999).

28

55.     In determining whether the jurisdictional minimum is met, courts consider all alleged recoverable damages, including emotional distress damages, punitive damages, statutory penalties, and attorneys' fees. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347-48 (1977) (superseded by statute on other grounds); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1155-56 (9th Cir. 1998).

56.     Plaintiff does not specifically quantify her damages in her Complaint. While Defendants denies any liability as to Plaintiff, the amount in controversy is determined based on Plaintiff's allegations in the complaint[13] and in her Statement of Damages served on Defendant ErGo Media. (Plaintiff's Statement of Damages is attached as **Exhibit N** hereto). Plaintiff's Statement of Damages demonstrates that the amount in controversy exceeds $75,000.

57.     Plaintiff alleges that she was discriminated against, harassed, and wrongfully terminated.  Plaintiff seeks:

- Pain, suffering, and inconvenience damages in the amount of $2,000,000.00
- Emotional distress damages in the amount of $1,000,000.00
- Loss of earnings in the amount of $125,000.00
- Loss of future earnings in the amount of $250,000.00
- Punitive damages in the amount of $10,000,000.00
- attorneys' fees and costs

*See* Statement of Damages, **Exhibit N**.

58.     Plaintiff alleges that she was wrongfully terminated on July 11, 2013. Plaintiff alleges that she "sustained and continues to sustain substantial losses in

[13]     *See Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) ("[i]n measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe.").

1   earnings and other benefits." *See* Complaint, ¶¶ 49, 57, 66, 83, 90, 112.

2        59.    Plaintiff alleges that she was earning an annual salary of $90,000.00

3   prior to her termination and, in 2012, received an additional holiday/end-of-the-year

4   cash bonus in the amount of $8,250.00. (Complaint, ¶s 13, 28.)  Based on Plaintiff's

5   alleged earnings in 2012, and her anticipated claim of lost earnings since her

6   termination on July 11, 2013, Plaintiff's loss of earnings claim exceeds $100,000 as

7   of the present date.

8        60.    Plaintiff alleges that she suffered emotional distress in an unspecified

9   amount.  Complaint, ¶s 50, 58, 67, 75, 84, 91, 96-97, 103 and Prayer for Relief.

10  Courts have held that such allegations alone are sufficient to satisfy the amount in

11  controversy requirement.  *See Egan v. Premier Scales & Sys.*, 237 F. Supp. 2d 774,

12  776 (W.D. Ky. 2002) (where plaintiff sought damages for embarrassment,

13  humiliation, and willful, malicious and outrageous conduct, the court held that the

14  defendant could "easily make the case that the claims are more likely than not to

15  reach the federal amount in controversy requirement"); *Simmons v. PCR Tech.*, 209

16  F. Supp. 2d 1029, 1031-35 (N.D. Cal. 2002) (holding that Plaintiff's damage claim,

17  including lost wages, medical expenses, emotional distress and attorneys' fees, was

18  enough to put the amount in controversy above $75,000).

19       61.    In addition to compensatory damages, Plaintiff's claims for punitive

20  damages are part of the amount in controversy when determining diversity

21  jurisdiction.  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *see also*

22  *Aucina*, 871 F. Supp. at 334 (S.D. Iowa 1994) ("[b]ecause the purpose of punitive

23  damages is to capture the Defendant's attention and deter others from similar

24  conduct, it is apparent that the plaintiff's claim for punitive damages alone might

25  exceed [the jurisdictional amount]").

26       62.    Plaintiff also seeks to recover attorneys' fees in an amount to be

27  determined at trial.  *See* Complaint, ¶s 52, 60, 69, 77, 86, 113.  *Guglielmino v.*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 82246322.4   NOTICE OF REMOVAL OF DEFENDANT ERIK GORDON

1  *McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) ("[w]here an underlying

2  statute authorizes an award of attorneys' fees, either with mandatory or

3  discretionary language, such fees may be included in the amount in controversy").

4  Under California Government Code § 12965(b), attorneys' fees for cases brought

5  under California's FEHA are authorized.  Thus, Plaintiff's claims for lost earnings,

6  emotional distress, and attorneys' fees clearly place more than $75,000 in

7  controversy, based on Plaintiff's allegations and assertions in her Statement of

8  Damages.

9        63.    Although Defendant denies Plaintiff's factual allegations and denies

10  that she is entitled to any damages or other relief, based on Plaintiff's allegations

11  and prayer for relief and her Statement of Damages, the amount in controversy

12  associated with the claims alleged in the Complaint, if proven, would exceed the

13  $75,000 threshold set forth under 28 U.S.C. § 1332(a).

14  **IV.   THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN**

15        **SATISFIED**

16        64.    As set forth above, Defendant Erik Gordon was never served with

17  Summons and Complaint in this matter.  On that basis, his default was set aside and

18  vacated and his answer was deemed filed on January 27, 2015.  This Notice of

19  Removal is filed within thirty days of the date Erik Gordon became a party to this

20  action. Therefore, it is timely under 28 U.S.C. § 1446(b).

21        65.    As Plaintiff originally filed this action in the Superior Court of the

22  State of California, County of Los Angeles, removal to the United States District

23  Court, Central District of California, is proper under 28 U.S.C. § 1441(a).

24        66.    The prerequisites for removal under 28 U.S.C. §§ 1332 and 1441 have

25  been met.

26        67.    As required by 28 U.S.C. § 1446(d), Defendant will provide notice of

27  this removal to Plaintiff through her attorneys of record.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

DB1/ 82246322.4    NOTICE OF REMOVAL OF DEFENDANT ERIK GORDON

1    68.    As required by 28 U.S.C. § 1446(d), a copy of this Notice will be filed

2    with the Superior Court of the State of California, County of Los Angeles.

3    69.    Defendant has sought no similar relief.

4    70.    Defendant's Answer was deemed filed in California Superior Court for

5    the County of Los Angeles on January 27, 2015. (See **Exhibit NN**)

6    71.    Plaintiff apparently made several unsuccessful attempts to perfect

7    Defendants' respective defaults in this matter and refused Defendants' requests to

8    set aside the defaults, thus forcing Defendants to bring respective motions for relief.

9    Consequently, the Superior Court file in this matter contains substantial pleadings

10    and documents filed by Plaintiff as well as Defendants' motions for relief prior to

11    the vacation of Defendants' defaults, as well as subsequent pleadings by Plaintiff.

12    72.    The pleadings and documents that have been filed or served in this

13    matter as contained in the Superior Court file are attached hereto as **Exhibits A**

14    **through SS**, inclusive as identified above.

15    73.    To Defendant's knowledge, no other documents have been filed or

16    served upon it, and there are no other named defendants.  Consequently, the

17    attached exhibits, as required by 28 U.S.C. § 1446(a), constitute all the process,

18    pleadings, and orders served on or filed by the Plaintiff and/or the named

19    defendants in this action as contained in the Superior Court file.

20    74.    If any question arises as to the propriety of the removal of this action,

21    Defendant requests the opportunity to present a brief in support of its position that

22    this case is removable.

23    ///

24    ///

25    ///

26    ///

27    ///

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

DB1/ 82246322.4    NOTICE OF REMOVAL OF DEFENDANT ERIK GORDON

1    **V.**     **CONCLUSION**

2        75.    Based on the foregoing, Defendant respectfully requests that this

3    action be removed from the Superior Court of the State of California, County of

4    Los Angeles, to the United States District Court for the Central District of

5    California, and that all further proceedings in this matter take place in the United

6    States District Court for the Central District of California.

7

8

9    Dated:      February 26, 2015           MORGAN, LEWIS & BOCKIUS LLP
                                             JASON S. MILLS
10                                           TERI E. KIRKWOOD

11

12                                           By  /s/Teri E. Kirkwood
                                                 TERI E. KIRKWOOD
13                                               Attorneys for
                                                 ERGO MEDIA CAPITAL, LLC and
14                                               ERIK H. GORDON

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

DB1/ 82246322.4   NOTICE OF REMOVAL OF DEFENDANT ERIK GORDON

## PROOF OF SERVICE

I am a citizen of the United States and employed in Los Angeles, California. I am over the age of eighteen (18) and not a party to the above-entitled action.

On April 2, 2015 I served the foregoing document described as:

**MOTION TO DISMISS ACTION FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TO DISMISS OR TRANSFER THE ACTION FOR FORUM *NON-CONVENIENS*; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LOTTI BLUEMNER IN SUPPORT THEREOF**

on the following interested party in this action:

**Plaintff ERGO MEDIA CAPITAL, LLC; Plaintiff CEE GEE CEE, LLC, and Plaintiff ERIK H. GORDON**

**X**   by placing **X** **a true copy** ___ the original in a sealed envelope addressed as follows:

> *Christopher A. Parlo, Esq.*
> *Andriette A. Roberts, Esq.*
> *MORGAN EWIS & BOCKIUS LLP*
> *101 Park Avenue*
> *New York, NY 10178*

**X**   **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

___   **BY FEDERAL EXPRESS OVERNIGHT MAIL**

___   **BY EMAIL to:**

___   BY PERSONAL SERVICE:   I delivered such envelope by hand to the addressees as listed above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 2, 2015, at Los Angeles, California.

_____

---

**PLAINTIFF LOTTI BLUEMNER'S MOTION TO DISMISS**